**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EXXONMOBIL OIL CORPORATION, | CIVIL ACTION NO. 1:16-cv-09527-ER |
| Petitioner, | |
| v. | |
| TIG INSURANCE COMPANY, | |
| Respondent. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO LIFT STAY, FOR ORDER CONFIRMING ARBITRATION AWARD, AND FOR ENTRY OF FINAL JUDGMENT INCLUDING PREJUDGMENT INTEREST**

COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000

*Counsel for Petitioner*
*ExxonMobil Oil Corporation*

November 21, 2019

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................. 1

II.    FACTUAL BACKGROUND.............................................................. 2

       A.    The TIG Insurance Policy ..................................................... 2

       B.    The MTBE Product Liability Litigation ............................... 2

       C.    Mobil's Insured Loss and TIG's Breach of Contract........................ 4

       D.    Prior Proceedings in this Court ............................................. 6

       E.    The Arbitration and Award of the Tribunal ........................ 7

III.   ARGUMENT..................................................................................... 9

       A.    The Court Should Confirm And Enter Judgment Upon The
             Award. ................................................................................. 9

       B.    Mobil Is Entitled To, And The Court Should Enter Judgment
             Granting, Prejudgment Interest. ......................................... 15

             1.    Pre-Award Interest ................................................... 15

             2.    Post-Award Prejudgment Interest........................... 20

IV.    CONCLUSION................................................................................ 22

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                      **Page(s)**

*Anglim v. Vertical Grp.*,
   2017 WL 543245 (S.D.N.Y. Feb. 10, 2017) ......................................................12

*Barclays Capital Inc. v. Hache*,
   2016 WL 3884706 (S.D.N.Y. July 12, 2016).................................................12

*Buhannic v. Tradingscreen, Inc.*,
   2018 WL 3611985 (S.D.N.Y. July 27, 2018) (Ramos, J.) *aff'd*,
   779 F. App'x 52 (2d Cir. 2019) ............................................................10

*D.H. Blair & Co. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006) .................................................................10

*Finger Lakes Bottling Co. v. Coors Brewing Co.*,
   748 F. Supp.2d 286 (S.D.N.Y. 2010) ...................................................18, 19, 20

*Florasynth, Inc. v. Pickholz*,
   750 F.2d 171 (2d Cir. 1984) ..............................................................12, 14

*Folkways Music Publishers, Inc. v. Weiss*,
   989 F.2d 108 (2d Cir. 1993) ...............................................................10

*Ganfer & Shore, LLP v. Witham*,
   2011 WL 321151 (S.D.N.Y. Jan. 6, 2011) ..........................................................21

*Global Reinsurance Corp. of Am. v. Argonaut Ins. Co.*,
   634 F. Supp. 2d 342 (S.D.N.Y. 2009) ...........................................................21

*Goldberger v. Fischer*,
   54 A.D.3d 955 (2d Dep't 2008).............................................................21

*Grobman v. Chernoff*,
   15 N.Y.3d 525, 940 N.E.2d 557 (2010)..........................................................19

*Hall Street Assocs., L.L.C. v. Mattel, Inc.*,
   552 U.S. 576 (2008)...................................................................9, 11

*In re Levin & Glasser, P.C. v. Kenmore Prop., LLC*,
   70 A.D.3d 443 (1st Dep't 2010) .............................................................18

*Sayigh v. Pier 59 Studios, L.P.*,
   2015 WL 997692 (S.D.N.Y. Mar. 5, 2015)......................................................21

*T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
   592 F.3d 329 (2d Cir. 2010) ........................................................................11

*Tempo Shain Corp. v. Bertek, Inc.*,
   120 F.3d 16 (2d Cir. 1997) ............................................................................9

*TIG Ins. Co. v. Mobil Oil Corp.*,
   Index No. 656231/2016 ...............................................................................6

*Triomphe Partners, Inc. v. Realogy Corp.*,
   2011 WL 3586161 (S.D.N.Y. Aug. 15, 2011)............................................12, 14

*Tucker Leasing Capital Corp. v. Farber*,
   882 F. Supp. 1290 (E.D.N.Y. 1995) ...............................................................21

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*,
   484 U.S. 29 (1987)......................................................................................10

*Waveform Telemedia, Inc. v. Panorama Weather N. Am.*,
   2007 WL 678731 (S.D.N.Y. Mar. 2, 2007).....................................................12

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*,
   103 F.3d 9 (2d Cir. 1997) ............................................................................10

**Statutes**

9 U.S.C. § 9 ..............................................................................1, 9, 11, 12, 22

9 U.S.C. § 10..................................................................................11, 13

9 U.S.C. § 12..........................................................................................12

**Other Authorities**

N.Y. C.P.L.R. § 5001 .............................................................................15, 19, 22

N.Y. C.P.L.R. § 5002 ..........................................................................20, 21, 22

N.Y. C.P.L.R. § 5004.............................................................................15, 20, 21

# I.    INTRODUCTION

On February 1, 2017, this Court ordered the parties to arbitration, and stayed all further proceedings in this action pending arbitration.  Docs. 21, 22; *see also* Doc. 29.  An arbitration ensued and, after 2½ years of proceedings, the arbitral Tribunal conducted a merits hearing based on several hundred pages of briefing and thousands of pages of witness statements, expert reports, and documentary evidence.   On August 17, 2019, the Tribunal delivered its 46-page "Award of the Arbitral Tribunal," dated August 14, 2019 ("Award").   Declaration of Donald W. Brown, dated November 21, 2019 ("Brown Decl.") at ¶ 2, Ex. A.  The Tribunal determined that Petitioner ExxonMobil "has prevailed on its [insurance] claim" and is "entitled to receive TIG [Insurance Company]'s full Policy limits of $25 million" to cover losses ExxonMobil incurred in underlying product liability litigation.  *Id*. at ¶ 147.

ExxonMobil now moves the Court to lift the stay, and applies for an order confirming the $25 million Award and entering a final judgment thereon.  9 U.S.C. § 9.  In addition, ExxonMobil asks that the judgment include prejudgment interest at the New York statutory rate of 9% per annum running from the time TIG breached its contractual obligation to pay ExxonMobil's insurance claim (October 30, 2016) to the date of the Court's judgment — specifically, interest in the amount of **$6,280,429** from October 30, 2016, to the date of the Award, and in the amount of **$6,164.38** per each day thereafter until the date of the Court's judgment.

## II.   FACTUAL BACKGROUND

### A.   The TIG Insurance Policy

Respondent TIG Insurance Company of Michigan ("TIG") issued Excess Liability Insurance Policy No. 01-0113-98 (TIG Policy No. XEX 37690650) ("Policy") to Mobil Corporation.  Arbitration Exhibit C-1 (Brown Decl. Ex. B).  The Policy covers the Mobil subsidiary, Mobil Oil Corporation, which was renamed ExxonMobil Oil Corporation (hereinafter "Mobil") after Exxon Corporation and Mobil Corporation merged in 1999.

 The Policy provides third-party liability insurance coverage subject to a $25 million limit.  *Id.* at 2.  It is one of three policies that, together, provide $75 million of coverage excess of $250 million of underlying limits.  *Id.*  The Policy provides broad liability coverage for, *inter alia*, sums Mobil becomes obligated to pay as damages on account of property damage caused by its products.  *Id.* at 3, Insuring Agreements, I & III(c), (e).

As this Court found in ordering the parties to arbitrate, the Policy also includes an "Alternative Dispute Resolution Endorsement" (Endorsement No. 11), which Mobil invoked and which, under the circumstances presented, mandated "binding arbitration."  *Id.* at Endorsement 11; *see also* Docs. 21, 22, 29.

### B.   The MTBE Product Liability Litigation

Beginning in the late 1990s, individual plaintiffs, private water companies and public water districts, and state attorneys general sued Mobil (and many other oil

and gas companies) in a series of lawsuits seeking damages for groundwater and drinking water well contamination involving methyl tertiary butyl ether ("MTBE"). MTBE is a gasoline additive once used by Mobil and other companies as an octane enhancer to reduce engine "knock" and as an oxygenate to reduce air pollution as required by federal mandates under the Clean Air Act.  Award (Brown Decl. Ex. A) at ¶¶ 8-13.  MTBE proved highly effective in reducing emissions and successfully abating air pollution, but the MTBE plaintiffs alleged that gasoline containing MTBE was a defective and hazardous product to the extent that, if and when there were gasoline spills and leaks, MTBE would migrate relatively quickly through soil and reach and contaminate groundwater and drinking water wells, causing the water to smell and taste foul, making it undrinkable.  *Id.* at ¶¶ 11-14.

The MTBE plaintiffs asserted that Mobil was legally liable for damages primarily on product liability grounds.  *Id.* at ¶ 13.  Mobil's losses in the MTBE lawsuits, including defense costs, settlement costs, and judgment costs, mounted over time and, by the time of the Award, far exceeded $325 million (*i.e.*, the amount of the limits underlying the TIG layer of coverage – $250 million – plus the coverage provided by the TIG layer – $75 million), and thus implicated the full $25 million TIG Policy limit.  *Id.* at ¶¶ 142-46. Indeed, through June 1, 2018 (shortly before Mobil filed its opening arbitration brief), Mobil's overall MTBE losses were approximately $435 million.  *Id.* at ¶ 144.

### C.    Mobil's Insured Loss and TIG's Breach of Contract

The Tribunal concluded that Mobil's insurance covers more than $350 million of its MTBE losses; that those losses well exceed and consume the $75 million layer of coverage in which TIG participates; and that, consequently, TIG is obligated to pay Mobil the full $25 million of the Policy's limit.  Award (Brown Decl. Ex. A) at ¶¶ 142-147.

In accordance with the Tribunal's Award, the $25 million of coverage provided by the TIG Policy was both first reached on, and fully consumed as of, June 1, 2016, when Mobil paid approximately $158 million in satisfaction of a single large judgment entered in favor of the State of New Hampshire.  *Id.* at ¶¶ 14-16, 142-146; *and see* August 30, 2019, letter from Covington & Burling LLP to TIG Insurance Company and its counsel, including two attachments, all attached to the Brown Decl. as Exhibit C.

By a May 17, 2016, letter, Mobil informed TIG that, as a result of the scheduled June 1 payment of the State of New Hampshire judgment, "Mobil's loss greatly exceeds the TIG limits, and Mobil will need to access the full $25 million of TIG coverage to satisfy the [State of New Hampshire] judgment."  Arbitration Exhibit C-72 (Brown Decl. Ex. D) at 2.  On September 29, 2016, Mobil wrote to all its insurers, including TIG, confirming that the June 1, 2016, payment to the State of New Hampshire had been made, and stating that Mobil was entitled to be

reimbursed by its insurers, including TIG.  Arbitration Exhibit C-73 (Brown Decl. Ex. E) at 1 and 2.

The TIG Policy provides that Mobil is to make its "definite demand for payment for any amount of the ultimate net loss for which [TIG] may be liable under this Policy . . . after [Mobil] shall have paid such amount," and that "[s]uch losses shall be due and payable by [TIG] within thirty (30) days after they are respectively demanded and proven in conformity with this Policy."  TIG Policy (Brown Decl. Ex. B) at 20, Article V(g).

Mobil made a definite demand for payment of the "amount of the . . . loss for which [TIG] may be liable" – $25 million – on May 17, 2016, as described above. Given the Policy's "after the Insured shall have paid such amount" language, however, the $25 million claim arguably did not ripen until Mobil's June 1, 2016, payment.  Further, because Mobil's letter confirming that the June 1 payment had been made was not sent until September 29, 2016, one might argue that the demand was not made until then.  Rather than debate these points, Mobil agrees to stipulate that its $25 million demand was made on September 29, 2016.  Therefore, given the TIG Policy's 30-day payment provision quoted above, TIG, which has not paid a dime of Mobil's $25 million claim to this day, was, is, and has been in breach of its contractual obligation to pay $25 million as of, and ever since, October 30, 2016.

As previously related to this Court, Mobil and TIG met to discuss Mobil's MTBE insurance claim on November 3, 2016.  Doc. 1 at ¶ 10.  At the conclusion of that meeting, Mobil understood that TIG was considering Mobil's claim, and that there would be further discussions with TIG.  *Id.*  Instead, without any notice, on November 30, 2016, TIG filed a preemptive lawsuit in New York County Supreme Court (*TIG Ins. Co. v. Mobil Oil Corp.*, Index No. 656231/2016) asking for a judicial declaration that TIG owed no coverage obligations whatsoever under the Policy for Mobil's MTBE losses (the "TIG State Declaratory Judgment Action").  Doc. 1 at ¶ 11; Doc. 4 at 3; Doc. 5, at ¶ 3, Exhibit B.  The TIG State Declaratory Judgment Action constituted an unequivocal denial of Mobil's insurance claim in breach of TIG's contractual obligations to Mobil under the Policy.

### D.    Prior Proceedings in this Court

Nine days later, on December 9, 2016, Mobil sent TIG a letter invoking the TIG Policy's arbitration provision (Endorsement 11), and demanding that TIG immediately dismiss its State Declaratory Judgment Action.  Doc. 4 at 3; Doc. 5, Exhibit C.  TIG refused to arbitrate and refused to dismiss its State action.

Mobil therefore petitioned this Court for an order compelling TIG to submit to arbitration pursuant to Endorsement 11 to the Policy, discussed above, and enjoining TIG from pursuing its State Declaratory Judgment Action.  Docs. 1, 4, 5, and 17.  TIG opposed.  Doc. 15.  At the conclusion of oral argument on February 1,

2017, the Court granted Mobil's Petition to Compel Arbitration, ordered the parties to proceed to arbitration, and enjoined TIG from proceeding with its State Declaratory Judgment Action.  Doc. 22 at 24:18-24; *and see generally id.* at 21:21-25:16.  The Court further ordered that it would "retain jurisdiction to consider any issues that may arise after the arbitrators have rendered their awards and stay the proceedings in this matter pending arbitration … ."  Doc. 22 at 25:6-12; Doc. 21.

On March 2, 2017, TIG filed a letter asking the Court to "clarify the intent" of its order, and to dismiss all claims or, alternatively, certify the order as final to allow TIG to appeal.  Docs. 24, 25.  The Court denied TIG's requests, stating that "no 'clarification of intent'" is needed as the "Court's Order is clear," and reaffirmed its intention to stay (not dismiss) this action, emphasizing that it was "retain[ing] jurisdiction to consider any issues that may arise after the arbitrators have rendered their awards."  Doc. 29 at 1-2.

### E.    The Arbitration and Award of the Tribunal

The parties proceeded to arbitration before a highly credentialed, three-member Tribunal seated in New York City.  Brown Decl. at ¶ 7, Exs. F, G.  Mobil appointed Robert B. Davidson, Esq., to serve as an arbitrator, and TIG appointed Gavin Kealey, Q.C.  *Id.*  John G. Bickerman, Esq., was selected to serve as the Tribunal's Chair.  *Id.*  At a procedural conference conducted on February 12, 2018, the matter was set for a merits hearing in April 2019.  *Id.*

In advance of the merits hearing, the parties completed four rounds of written submissions:  an opening submission (Mobil), a responding submission (TIG), a reply submission (Mobil), and a sur-reply submission (TIG).  Brown Decl. at ¶ 8. The briefs alone totaled more than 400 pages.  Brown Decl. at ¶ 8.  The parties also submitted fifteen (15) individual witness statements from fourteen (14) fact witnesses, as well as two (2) expert witness reports, altogether nearly 400 pages of testimonial evidence and attachments.  *Id*.  The record also included an extensive body of documentary evidence comprising approximately 1,737 exhibits.  *Id*.

The merits hearing was held over two days in April 2019 at the JAMS offices in New York.  Brown Decl. at ¶ 13.  On August 17, 2019, the Tribunal delivered its "Award of the Arbitral Tribunal," dated August 14, 2019, a *unanimous* 46-page reasoned decision and award concluding that "Claimant Mobil has prevailed on its claim" that its MTBE losses are covered by the TIG Policy and that "Mobil is entitled to receive TIG's full policy limits of $25 million."  Award (Brown Decl. Ex. A) at 46.  The Tribunal ruled that "TIG shall pay Mobil the full limits of $25 million."  *Id*.

More than three months later, TIG still has paid nothing.  Instead, it has stonewalled Mobil and provided no substantive response to Mobil's inquiries regarding TIG's obligation to pay the amount awarded by the Tribunal other than (because it was compelled to respond) its cryptic letter responding to Mobil's pre-motion letter to the Court.  Doc. 32, responding to Doc. 31.  Thus, TIG's stubborn

breach of contract continues into its fourth year, and remains wholly unremedied, to Mobil's substantial and increasing loss.

### III.   ARGUMENT

**A.   The Court Should Confirm And Enter Judgment Upon The Award.**

The Federal Arbitration Act ("FAA") provides that a party to an arbitration may apply to the United States court for the district in which an arbitral award is made for an order confirming the award, "and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  9 U.S.C. § 9.  As the Supreme Court has observed, "[t]here is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008).  The FAA thus implements "a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Id*. at 588.

In furtherance of this policy, "arbitration panel determinations are generally accorded great deference under the FAA" (*Tempo Shain Corp. v. Bertek, Inc*., 120 F.3d 16, 19 (2d Cir. 1997)), and Section 9 motions to confirm arbitration awards receive "streamlined treatment."  *Hall Street Assocs., L.L.C., supra* at 682.  The court's function in confirming an arbitration award is "severely limited." *Willemijn*

*Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997). "Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993). Indeed, as this Court observed just last year, "a court is required to enforce an arbitration award as long as there is a 'barely colorable justification' for the outcome reached." *Buhannic v. Tradingscreen, Inc*., 2018 WL 3611985, at *3 (S.D.N.Y. July 27, 2018) (Ramos, J.) *aff'd,* 779 F. App'x 52 (2d Cir. 2019) (citing *Leeward Constr. Co. v. Am. Univ. of Antigua—Coll. of Med*., 826 F.3d 634, 638 (2d Cir. 2016)). "The arbitrator's rationale for an award need not be explained," and an award must be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citations and internal quotation marks omitted).

"Confirmation of an arbitration award is thus 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *Buhannic*, *supra* at * 3 (quoting *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 132 (2d Cir. 2015), in turn quoting *D.H. Blair & Co., supra* at 110); *see also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("Courts … do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts"). Indeed,

> "the award should be enforced, *despite a court's disagreement with it on the merits*, if there is a barely colorable justification for the outcome reached." *Id.* (quoting *Wallace* [v. *Buttar*, 378 F.3d 182 (2d Cir. 2004)] at 190) (internal quotation marks omitted).  With respect to contract interpretation, *this standard essentially bars review of whether an arbitrator misconstrued a contract.  See id.*

*T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (citing and quoting *Stolt–Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 92 (2d Cir. 2008), *rev'd on other grounds,* 559 U.S. 662 (2010)) (emphasis added).

As the Supreme Court stressed in *Hall Street Associates, supra* at 587, courts *must* "grant confirmation in all cases, except when one of the 'prescribed' exceptions [provided at 9 U.S.C. § 9] applies."  That is, the court must grant confirmation "unless the award is vacated, modified, or corrected *as prescribed in* sections 10 and 11 of [Title 9]."  9 U.S.C. § 9 (emphasis added).  Section 10 prescribes that the court "may" make an order vacating an award "upon the application of any party to the arbitration." 9 U.S.C. § 10.

TIG, however, has not made, let alone prevailed on, any such application.  Accordingly, the sole and narrow exception to Section 9's mandate — that "the court must grant [a confirmation] order *unless* the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title" — does not apply, and the Award must be confirmed.  9 U.S.C. § 9.

11

Moreover, Section 9's exception in cases where "the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [Title 9]" *cannot* apply at this point because TIG's jurisdictional time to make an application "as prescribed in sections 10 and 11" has expired.  9 U.S.C. § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered").  "No exception to this three month limitations period is mentioned in the statute.  Thus, under its terms, a party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run, *even when raised as a defense to a motion to confirm.*"  *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 174-77 (2d Cir. 1984) (emphasis added).  "There are no exceptions to this rule."  *Waveform Telemedia, Inc. v. Panorama Weather N. Am.*, 2007 WL 678731, at * 5 (S.D.N.Y. Mar. 2, 2007). "Section 12's … three-month time limit for service is absolute."  *Anglim v. Vertical Grp.,* 2017 WL 543245, at *7 (S.D.N.Y. Feb. 10, 2017).  The three-month deadline "is not subject to extension."  *Barclays Capital, Inc. v. Hache*, 2016 WL 3884706, at *2  (S.D.N.Y. July 12, 2016).  *See also Triomphe Partners, Inc. v. Realogy Corp.*, 2011 WL 3586161, at *2 (S.D.N.Y. Aug. 15, 2011) ("This limitation period is strictly construed" (petition to vacate filed one day late was time-barred)).

At the October 31, 2019, pre-motion hearing requested by Mobil, TIG stated that "we think that there are issues with the [Award] that give rise to a proper motion

under" 9 U.S.C. § 10(a)(4), and that "we would like the opportunity to have that issue raised before" the Court.  Reporter's Transcript of Proceedings, October 31, 2019 (Doc. 34) ("RT") at 3:10-15.  The Court gave Mobil leave to file its motion for an order confirming the Award and, at TIG's request, gave TIG three weeks to respond to Mobil's motion (*i.e.*, on or before December 12, 2019) and set the same December 12, 2019, deadline for TIG to (as TIG put it) "cross-move on the vacatur." RT at 4:18-5:14.  TIG may argue that the Court's scheduling order, giving TIG a December 12, 2019, deadline to file any motion to vacate the Award, somehow extended TIG's statutory time to make an application for an order vacating the Award pursuant to 9 U.S.C. § 10.  TIG would be incorrect.

As noted, the three-month statute of limitation is absolute and may not be extended.  Moreover, in requesting leave to file a cross-motion on or before December 12, TIG did not address the statutory three-month statute of limitation, inform the Court that the three-month deadline was approaching, ask the Court to excuse it from the jurisdictional statute of limitation, or establish any grounds on which the Court could extend the statutory time limit.  Thus, even if an extension were permissible, it cannot be argued that TIG sought or that the Court agreed to extend TIG's statutory time in simply agreeing to TIG's proposed briefing schedule.

It also is important to note that the briefing schedule requested by TIG did not preclude TIG from making its motion *earlier* than the December 12 deadline if

necessary.  But TIG did not do so.  In not doing so, TIG forfeited any right to seek to vacate the Award.  *See Florasynth, supra* at 175 ("there is no common law exception to the three month limitations period on the motion to vacate";  because "'the statute giving the right fixes the time period within which the right may be enforced, the time so fixed becomes a limitation *on such right*'" (citation omitted; emphasis added)).  Moreover, even if equitable tolling were available, it would not apply here.  TIG is unable to demonstrate, as required, that it "has been pursuing [its] rights diligently," and "that some extraordinary circumstance stood in [its] way and prevented timely filing."  *See Triomphe Partners*, *supra* at *3 (quoting *Bolarinwa v. Williams,* 593 F.3d 226, 231 (2d Cir. 2010), in turn quoting *Lawrence v. Fla.*, 549 U.S. 327, 336 (2007) (internal quotation marks omitted)).

Thus, TIG may not raise vacatur as a defense to Mobil's motion to confirm the Award.  *See Florasynth*, *supra* at 177 ("When the three month limitations period has run without vacation of the arbitration award, the successful party has *a right* to assume the award is valid and untainted, and to obtain its confirmation in a summary proceeding" (emphasis added)).  With that said, the central and most important point, as explained above and as will become increasingly evident over the course of the briefing, is that TIG has no legitimate grounds on which to seek to vacate the Award, and the Award should be summarily confirmed on its merits as contemplated by the FAA.

**B.      Mobil Is Entitled To, And The Court Should Enter Judgment Granting, Prejudgment Interest.**

   1.     **Pre-Award Interest**

          a)     <u>The Tribunal Lacked Jurisdiction to Award Pre-Award Interest</u>

Mobil suffered an MTBE loss well in excess of the TIG Policy's $25 million limit, and therefore pressed in arbitration its claim to $25 million of insurance coverage.  Mobil prevailed.  The Tribunal sustained Mobil's insurance claim in full and directed TIG to pay Mobil $25 million.

Mobil asked the Tribunal also to award 9% interest, in accordance with New York's statutory 9% interest rate (C.P.L.R. §§ 5001(a), 5004) and the Policy's New York Governing Law provision (TIG Policy at 23, Art. V(q)), running from the time TIG breached its obligation to pay Mobil's $25 million claim (October 30, 2016) to the date of the Award.  Brown Decl. Ex. H at 138-39; Ex. J at 137-41.  TIG opposed Mobil's request.  Brown Decl. Ex. I at 84-85; Ex. K at 55-56.

TIG argued that the Policy's ADR provision explicitly deprived the Tribunal of jurisdiction to award interest on a full-limits claim, such as Mobil's.  TIG argued that Mobil's "claim for damages extending beyond the $25 million limit of the TIG Policy is precluded by the express terms of Endorsement 11 (Alternative Dispute Resolution Endorsement) of the TIG Policy, the very provision on which Mobil relies to establish the jurisdiction of the Tribunal," in that "Endorsement No. 11 provides: *It is agreed that any decision, award or agreed settlement made as a result*

15

*of an ADR process shall be limited to the limits of liability of this Policy."* Brown Decl. Ex. I at 85, ¶ 222 (first emphasis added). TIG went on to argue that "there is no statutory framework which provides the arbitrators with a *jurisdiction* to award interest." *Id*. at 85, ¶ 223 (emphasis added).

TIG expanded on its "jurisdictional" argument in its sur-reply, arguing that Endorsement No. 11 "*expressly limits the jurisdiction of the dispute resolution body (in this case the Tribunal) as to the amount of any award issued.  As an award for interest on top of the limit would necessarily exceed that limit, it follows that the Tribunal has no power to issue such an award.*" Brown Decl. Ex. K at 56 (emphasis added).

TIG drove home its contention that the Tribunal lacked jurisdiction to award interest in the course of the merits hearing, arguing that Endorsement No. 11 "is a provision that, gentlemen, *defines your jurisdiction in terms of an award*, and defines that jurisdiction as being limited to awarding the policy limit as stated." Reporter's Transcript of Proceedings, April 17, 2019 (Brown Decl. Ex. L) at 76:24-77:4 (emphasis added).  "The limits of liability of this policy mean 25 million, and that is clearly what that clause *defines your jurisdiction* in relation to any award to be." *Id*. at 77:13-17 (emphasis added).  TIG's counsel argued that the ADR Endorsement "*provide[s] in absolutely explicit terms the jurisdiction of the arbitral tribunal* is to award a figure that can never exceed 25 million."  Reporter's Transcript of

Proceedings, April 18, 2019 (Brown Decl. Ex. M) at 543:20-24 (emphasis added). TIG argued that if the Tribunal issued "an award of limits plus interest," the resulting number would exceed $25 million, "[a]nd this clause says you cannot do that. *With respect to the tribunal, we do say that this is jurisdictional, so you have no contractual power to do anything else*." *Id*. at 544:4-16 (emphasis added).

The Tribunal accepted and honored TIG's "jurisdictional" argument. The Tribunal determined that (1) because the Policy's Alternative Dispute Resolution Endorsement provides that "any decision, award, or agreed settlement made as a result of an ADR process shall be limited to the limits of liability of this policy" ($25 million), (2) the Tribunal "lack[s] the jurisdiction to make an award that exceeds" $25 million, and therefore, (3) "the TIG Policy limits the *award* we can make to the policy limits" (emphasis by the Tribunal). Award (Brown Decl. Ex. A) at 42-44, ¶¶ 137, 138, 141. Having found Mobil to be entitled to the entire $25 million Policy limit in satisfaction of its full-limit claim, the Tribunal concluded that it "lacks jurisdiction" to award any additional amount as interest to "place the party that has suffered the breach in the same position it would have realized had there been no breach," *even though* "the proposition that a carrier should not benefit from holding back an amount it owes its insured" "is certainly a reasonable public policy argument." *Id.* at ¶¶ 141, 134, 136; *see generally id.* at ¶¶ 133-41.

17

b)    The Court Has Jurisdiction to Award Pre-Award Interest

In ordering arbitration, the Court "retain[ed] jurisdiction to consider any issues that may arise after the arbitrators have rendered their awards … ." Doc. 22 at 25:6-12; Doc. 29 at 2.  Because the Tribunal concluded that an award of interest was beyond the scope of its jurisdiction, the issue of pre-Award interest falls squarely to the retained jurisdiction of this Court.  The Tribunal recognized this explicitly.  In its Award, the Tribunal strongly suggested that, because it lacked jurisdiction to award pre-Award interest, Mobil "is not foreclosed from seeking such pre-[Award] interest in a subsequent court proceeding to confirm an award."  Award (Brown Decl. Ex. A) at 44, n.4 (stating that *In re Levin & Glasser, P.C. v. Kenmore Prop., LLC*, 70 A.D.3d 443, 445-46 (1st Dep't 2010) "does seem to imply" as much).

The Tribunal was correct in recognizing that this Court, in confirming the Award, has the authority to order pre-Award interest given the Tribunal's jurisdictional lack of authority to do so.  To be clear, if the arbitrators *had* authority to award pre-Award interest and had declined to do so, the Court in that instance could not award pre-Award interest in a subsequent confirmation proceeding. *Finger Lakes Bottling Co. v. Coors Brewing Co.*, 748 F. Supp. 2d 286, 289 (S.D.N.Y. 2010) (citing *In re Levin & Glasser, P.C., supra* at 445-46).  But in the case at bar, where "the issue of prejudgment interest was determined by the arbitrator to be beyond the scope of this particular arbitration and thus not decided by the

arbitrator, that issue is properly before this Court." *Finger Lakes Bottling Co. supra* at 289-90.  *See also Grobman v. Chernoff*, 15 N.Y.3d 525, 528-29, 940 N.E.2d 557 (2010) (in the case of an arbitration agreement that did not "submit the issue of prejudgment interest to the arbitrator," the Appellate Division properly awarded prejudgment interest on the arbitrator's damages award).

This conclusion follows directly from TIG's own argument to the Tribunal. TIG insisted that the Tribunal did not have jurisdiction to address the issue of  pre-Award interest.  The Tribunal agreed that this issue was beyond the scope of the arbitration, and so beyond their authority, and the Tribunal denied the prevailing party's (Mobil's) request for interest while at the same time, just as in *Finger Lakes Bottling Co., supra*, making clear that it did so "without prejudice to [that party's right to] seek interest in any enforcement proceeding.'"  *Id*. at 289; *see* Award (Brown Decl. Ex. A) at 44, n.4.  In these circumstances, this Court has jurisdiction to award prejudgment (*i.e*., pre-Award) interest.

c)   Pre-Award Interest Is Mandatory

Under New York law, a creditor is entitled to prejudgment interest on all sums due as of the date they became due and, in actions for a breach of contract, the New York statutory rate of 9% is mandatory.  C.P.L.R. § 5001(a) ("Interest *shall be recovered* upon a sum awarded because of a breach of performance of a contract . . . .  Interest shall be computed from the earliest ascertainable date the cause of action

existed . . ." (emphasis added)); C.P.L.R. § 5004 ("Interest shall be at the rate of nine

per centum per annum, except where otherwise provided by statute"); *see Finger*

*Lakes Bottling Co. supra* at 290 ("in actions for a breach of contract … the statutory

rate is mandatory").

d)   <u>The Court Should Award Pre-Award Interest in the<br>Amount of $6,280,429</u>

As explained above, TIG breached its contract with respect to Mobil's $25

million insurance claim on, and as of, October 30, 2016.  Annual interest on that

amount using a simple rate of 9% is $2,250,000.  Prior to the Award, TIG was in

breach and had the use of money rightfully belonging to Mobil for two years and

288 days (October 30, 2016, through August 13, 2019).  The accrued interest over

that period of time (taking account of the 2016 leap year) is $6,280,429.  Thus, TIG

owes Mobil **$6,280,429** in pre-Award interest.  *See* Brown Decl. Ex. C.

## 2.   Post-Award Prejudgment Interest

Prejudgment interest is also mandatory for the period following issuance of

the Tribunal's Award.  C.P.L.R. § 5002 states that "[i]nterest shall be recovered upon

the total sum awarded, including interest to verdict, report or decision, in any action,

from the date the verdict was rendered or the report or decision was made to the date

of entry of final judgment."  C.P.L.R. § 5002.  "Interest under CPLR 5002 is a matter

of right and is not dependent upon the court's discretion or a specific demand for it

in the complaint."  *Goldberger v. Fischer*, 54 A.D.3d 955, 956 (2d Dep't 2008)

(internal quotation marks omitted); *see also Tucker Leasing Capital Corp. v. Farber*, 882 F. Supp. 1290, 1294 (E.D.N.Y. 1995) (C.P.L.R. § 5002 "provides for automatic entry of post-decision interest by the Clerk of the Court").

An arbitration award is a "verdict, report or decision" under C.P.L.R. § 5002. *See Sayigh v. Pier 59 Studios, L.P.*, 2015 WL 997692, at *13 (S.D.N.Y. Mar. 5, 2015); *Ganfer & Shore, LLP v. Witham*, 2011 WL 321151, at *7 (S.D.N.Y. Jan. 6, 2011), *report and recommendation adopted*, 2011 WL 308407 (S.D.N.Y. Jan. 28, 2011). Where a court is asked to confirm an award over which it exercises diversity jurisdiction, as in this case, prejudgment interest for the post-award period is governed by state law. *Global Reinsurance Corp. of Am. v. Argonaut Ins. Co.*, 634 F. Supp. 2d 342, 350–51 (S.D.N.Y. 2009). New York law dictates that "[i]nterest shall be at the rate of nine per centum per annum . . . ." C.P.L.R. § 5004.

Mobil therefore is entitled to post-Award prejudgment interest at an annual rate of 9% on the $25 million award. That interest began accruing on the date the Award establishing Mobil's entitlement to compensation on the full limits of the Policy was issued, August 14, 2019, and it continues to accrue over the period up to and including entry of a final judgment by this Court confirming the Award. Interest has been accruing throughout the more than three months that TIG has failed to acknowledge and satisfy its obligation to pay Mobil the $25 million Award, and it

will continue to accrue up to the date of this Court's judgment, at the rate of **$6,164.38** each day (.09 x 1/365 x $25,000,000).

## IV.    CONCLUSION

For the foregoing reasons, Petitioner Mobil respectfully requests that this Court issue an order, and enter a judgment, granting the following relief:

1.    Lifting the stay issued in this case on February 1, 2017;

2.    Confirming the Tribunal's Award pursuant to 9 U.S.C. § 9;

3.    Ordering TIG to pay to Mobil prejudgment interest, pursuant to C.P.L.R. § 5001 at the rate of 9% per annum, from the date of breach (October 30, 2016) up to the date of the Award (August 14, 2019), in the amount of **$6,280,429**;

4.    Ordering TIG to pay to Mobil prejudgment interest, pursuant to C.P.L.R. § 5002 at the rate of 9% per annum, from the date of the Award (August 14, 2019) through the date of the Court's judgment, *i.e.*, **$6,164.38** each day;

5.    Entering a final judgment thereon; and

6.    Ordering such other relief as the Court deems just and proper.

Dated: November 21, 2019

Respectfully submitted,

COVINGTON & BURLING LLP

By: *s/ Donald W. Brown*
     Donald W. Brown

P. Benjamin Duke
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000
pbduke@cov.com

Donald W. Brown
Jeffrey Davidson
Gretchen Hoff Varner
415 Mission Street, Suite 5400
San Francisco, California 94111-5356
(415) 591-7063
dwbrown@cov.com;
jdavidson@cov.com;
ghoffvarner@cov.com

Allan B. Moore
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4956
(202) 662-5575
amoore@cov.com

*Counsel for Petitioner*
*ExxonMobil Oil Corporation*