**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EXXONMOBIL OIL CORPORATION,

Petitioner,

v.

TIG INSURANCE COMPANY,

Respondent.

Case No. 16-cv-09527 (ER)

**MEMORANDUM OF LAW IN SUPPORT OF TIG INSURANCE COMPANY'S MOTION TO VACATE CERTAIN ORDERS AND THE FINAL JUDGMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................................ 2

A. THE COVERAGE DISPUTE ........................................................................................ 2

B. THE PROCEEDINGS BEFORE JUDGE RAMOS ........................................................................................ 3

C. JUDGE RAMOS'S DISQUALIFICATION LETTER ........................................................................................ 4

ARGUMENT ........................................................................................ 4

A. IT IS UNCONTESTED THAT JUDGE RAMOS WAS DISQUALIFIED FROM PRESIDING OVER THIS MATTER. ........................................................................................ 4

B. THE ORDERS AND FINAL JUDGMENT MUST BE VACATED DUE TO JUDGE RAMOS'S CONFLICT. ........................................................................................ 5

CONCLUSION ........................................................................................ 9

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

Chase Manhattan Bank v. Affiliated FM Ins. Co.,
343 F.3d 120 (2d Cir. 2003) .......... 5, 6, 7

Faulkner v. Nat'l Geographic Enters., Inc.,
409 F.3d 26 (2d Cir. 2005) .......... 8

In re Murchison,
349 U.S. 133 (1955) .......... 6

Liljeberg v. Health Servs. Acquisition Corp.,
486 U.S. 847 (1988) .......... 5, 6, 7

**Statutes**

28 U.S.C. § 455 .......... 1, 4, 5, 6, 8

**Rules**

Fed. R. Civ. P. 60 .......... 5, 8

Fed. R. Civ. P. 62.1 .......... 2, 8, 9

**Other Authorities**

Judicial Conference Codes of Conduct Committee, Advisory Opinion No. 71, available at
https://www.uscourts.gov/sites/default/files/guide-vol02b-ch02-2019_final.pdf .......... 5

**PRELIMINARY STATEMENT**

This is an insurance coverage dispute that proceeded to arbitration at the insistence of the insured, Petitioner ExxonMobil Oil Corporation ("Mobil"), and ultimately yielded a Court judgment of $33 million dollars in Mobil's favor under the policy issued by Respondent TIG Insurance Company ("TIG"). The rulings compelling arbitration, confirming the $25 million arbitral award and imposing approximately $8 million in prejudgment interest, as well as the final judgment embodying those rulings, were issued by Judge Edgardo Ramos. TIG has appealed these decisions to the Second Circuit.

Two weeks ago, Judge Ramos advised the parties, through a letter from this Court's Clerk of Court, that he owned stock in Mobil while he presided over the case. This financial interest was previously unknown to TIG. The letter from the Clerk of Court forthrightly stated—without any limitation or hesitation—that Judge Ramos's financial interest in one of the parties "would have required his recusal" from this matter under 28 U.S.C. § 455. As a result of this disclosure, Judge Ramos's orders and final judgment in this action must be vacated.

Courts addressing the effect of a disqualification under 28 U.S.C. § 455 have repeatedly noted the need to fashion a remedy that removes any appearance of impropriety and upholds the public's confidence in the judicial system. Indeed, the Second Circuit has expressly found that it is appropriate to vacate prior orders and judgments to rectify a situation in which a judge has ruled despite a basis for disqualification. The same remedy is required here. Put simply, vacatur is the only means for this Court to redress the inevitable appearance of partiality that results from these unfortunate circumstances. To ensure the fairness and justice that are the crux of the disqualification rule, TIG must be permitted to present the issues in this case to a judge without a disqualifying conflict of interest.

As set forth more fully below, TIG respectfully requests that this Court issue an indicative ruling under Federal Rule of Civil Procedure 62.1(a)(3) stating either (i) that it will grant TIG's motion to vacate the order compelling arbitration (Dkt. No. 21), the order confirming the arbitral award and imposing prejudgment interest (Dkt. No. 49), and the final judgment (Dkt. No. 52) in this matter if the Second Circuit remands for that purpose; or (ii) that the motion at least raises a substantial issue regarding the justification for vacatur, as well as any other relief the Court deems necessary.[1]

## FACTUAL BACKGROUND

### A. THE COVERAGE DISPUTE

This is an insurance coverage action. It arises out of numerous underlying lawsuits filed against Mobil alleging environmental contamination as a result of the releases of methyl tertiary butyl ether ("MTBE") (collectively, the "MBTE Lawsuits"). Mobil ultimately sought coverage from TIG for its losses resulting from the MBTE Lawsuits. After the parties unsuccessfully attempted to negotiate their dispute, TIG commenced an action with respect to the outstanding coverage issues in the Supreme Court of New York for New York County, captioned TIG Insurance Company v. ExxonMobil Oil Corporation, Index No. 656231/2016, seeking declaratory relief with respect to various coverage defenses. In response, Mobil notified TIG that it sought to "invoke[]" the Policy's Alternative Dispute Resolution Endorsement (the "ADR Endorsement") and, specifically, binding arbitration. On the same day, Mobil filed its Petition to

[1] TIG is filing, the same day that it files this motion, a motion in the Second Circuit to hold TIG's appeal from the judgment here in abeyance pending the resolution of this motion to vacate. Should this Court issue the indicative ruling that TIG requests, TIG would then seek remand from the Second Circuit for this Court to effectuate the vacatur TIG seeks.

Compel Arbitration and the parties briefed whether Mobil could unilaterally, and without TIG's consent, compel binding arbitration under the ADR Endorsement.

**B. THE PROCEEDINGS BEFORE JUDGE RAMOS**

On February 1, 2017, Judge Ramos held oral argument on Mobil's Petition to Compel Arbitration. Upon hearing both parties' arguments, Judge Ramos held that Mobil could unilaterally compel TIG under the ADR Endorsement to arbitrate this coverage dispute. Dkt. No. 21. Judge Ramos further enjoined TIG from proceeding in the New York Supreme Court action. Id.

Following Judge Ramos's order compelling arbitration, TIG submitted a letter to the Court on March 2, 2017 advising of its intention to appeal the order. Dkt. No. 24. To permit such an appeal to move forward, TIG requested that the Court clarify the finality of its ruling in a way that would permit an immediate appeal. Id. at 2. TIG noted that such finality would promote judicial economy and the efficient use of the parties' resources by permitting the arbitrability issue to be appealed ***before*** conducting the arbitration. Id. Judge Ramos denied that request by way of an order dated March 9, 2017, thus foreclosing any opportunity to appeal the ruling until after the completion of arbitration. Dkt. No. 29 at 2. Judge Ramos also retained jurisdiction over the matter to allow him to address any issues arising after the arbitration concluded. Id.

The parties conducted an arbitration in accordance with Judge Ramos's decisions. The arbitration panel entered an award in August 2019 (the "Arbitration Award"). Mobil filed a Motion to Confirm the Arbitration Award on November 21, 2019 (Dkt. No. 36), and TIG responded with a Cross-Motion to Vacate the Arbitration Award on December 4, 2019 (Dkt. No.

39). In its Motion to Confirm, Mobil also sought a ruling that would add prejudgment interest to the Arbitration Award in the amount of 9% per annum running from 2016. Dkt. No. 36.

Judge Ramos ultimately entered an Opinion & Order on these motions on May 18, 2020, in which he granted Mobil's Motion to Confirm and denied TIG's Cross-Motion to Vacate. Dkt. No. 49. In conjunction with this ruling, Judge Ramos entered judgment in excess of $33 million that included over $8 million in prejudgment interest. Dkt. No. 52. On June 19, 2020, TIG noticed an appeal to the Second Circuit. Dkt. No. 53.

### C. JUDGE RAMOS'S DISQUALIFICATION LETTER

On July 29, 2021, the Clerk of Court, Ruby J. Krajick, issued a letter to the parties. Dkt. No. 56. The Clerk explained that Judge Ramos had informed her that "it has been brought to his attention that while he presided over the case he owned stock in ExxonMobil Corporation." Id. at 1. Although the letter states that this ownership "neither affected nor impacted his decisions in this case," it notes that "his stock ownership would have required recusal under the Code of Conduct for United States Judges." Id. No further information has been provided.

## ARGUMENT

### A. IT IS UNCONTESTED THAT JUDGE RAMOS WAS DISQUALIFIED FROM PRESIDING OVER THIS MATTER.

A federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). A judge "shall also disqualify himself" where he has a known "financial interest . . . in a party to the proceeding." Id. § 455(b)(4). However, recusal "does not depend on whether the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew"—based, for instance, on a judge's ongoing duty to be informed about his financial interests. Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 859–60 (1988) (discussing

28 U.S.C. §§ 455(a), (b)(4) and (c)); see also Judicial Conference Codes of Conduct Committee, Advisory Opinion No. 71 at 105–06 (noting that Canon 3C of the Code of Conduct for United States Judges, the ethical canons that apply to federal judges, "closely tracks the language of § 455").[2]

Here, there is no dispute that Judge Ramos was disqualified from issuing the orders and final judgment in this matter. As the Clerk of Court explained, Judge Ramos owned stock in Mobil "while he presided over the case," and such ownership, "would have required recusal" if known at the time. Dkt. 56 at 1. As described below, those very facts provide grounds to vacate those rulings.

## B. THE ORDERS AND THE FINAL JUDGMENT MUST BE VACATED DUE TO JUDGE RAMOS'S CONFLICT.

It is crucial for this Court to vacate Judge Ramos's order compelling arbitration (Dkt. No. 21), order confirming the Arbitral Award and imposing prejudgment interest (Dkt. No. 49), and the final judgment (Dkt. No. 52) in order to avoid the appearance of impropriety in these proceedings. Under Federal Rule of Civil Procedure 60(b)(6), "[a] court may relieve a party . . . from a final judgment [or] order . . . for . . . "any [] reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Courts regularly vacate judgments where, as here, a disqualifying conflict first comes to light after judgment is entered. See, e.g., Liljeberg, 486 U.S. at 867–68 (granting motion to vacate judgment entered following a bench trial upon disclosure that judge held a financial interest in prevailing party); Chase Manhattan Bank v. Affiliated FM Ins. Co., 343 F.3d 120, 128 (2d Cir. 2003) (same). In fashioning this relief, Courts must consider the risk of injustice to the parties in this and other cases and the risk of undermining the public's confidence in the

[2] Available at https://www.uscourts.gov/sites/default/files/guide-vol02b-ch02-2019_final.pdf.

judiciary, meanwhile "continuously bear[ing] in mind that 'to perform its high function in the best way 'justice must satisfy the appearance of justice.'" Liljeberg, 486 U.S. at 864 (quoting In re Murchison, 349 U.S. 133, 136 (1955) (citation omitted)).

The Second Circuit's decision in Chase Manhattan Bank is instructive. There, while the dispute was being litigated, plaintiff Chemical Bank merged with another entity, Chase Manhattan Bank. 343 F.3d at 124. The case was then transferred to the docket of Judge Milton Pollack of the Southern District of New York, who presided over a 3.5-week bench trial and rendered judgment in favor of Chase Manhattan Bank. Id. Throughout the litigation, the parties had commonly referred to this entity by its prior name, "Chemical Bank." Id. at 123. Only after judgment had been entered did Judge Pollack realize he was disqualified by virtue of stock he owned in the merged entity, Chase Manhattan Bank. Id. at 126.

The Second Circuit found that "[t]hese facts create precisely the kind of appearance of impropriety that § 455(a) was intended to prevent" and vacated the judgment. Id. at 132 (quoting Liljeberg, 486 U.S. at 867). Vacatur was appropriate because, in the Court's view, the violation was "neither insubstantial nor excusable" and divestiture would not adequately cure the violation. Id. at 131–32 (same). The Court reached this conclusion even though the judge did not actually know of the conflict at the time ("he certainly should have known"), id. at 132 (same), and the judge held such a de minimis amount of stock that, in fact, "[he] had no real financial stake in the outcome," id. at 129. As the Second Circuit put it, "a headline (accurately) stating that the judge had entered a $92 million judgment to be shared by a corporation in which he owned $250,000 of stock would damage public confidence in the judiciary." Id. Nor was vacatur unfair to the parties, future litigants, or the public. While retrying the case would be

"burdensome," that alone was not grounds to preserve a judgment tainted by the appearance of impropriety. Id. at 132.

Vacatur is likewise appropriate to redress Judge Ramos's previously undisclosed financial interest in Mobil. Although that conflict was not intentional and, as conveyed by the Clerk of Court, "neither affected nor impacted [Judge Ramos's] decisions in this case," those are, respectfully, not the standards by which this Court must assess whether to vacate a judgment. Instead, once a conflict has been identified (as it has been here), this Court must strive to "satisfy the appearance of justice," Liljeberg, 486 U.S. at 864. As in Chase Manhattan Bank, the violation here is "neither insubstantial nor excusable," 343 F.3d at 132, and it would greatly "damage public confidence in the judiciary" if this Court let stand a $33 million judgment in favor of a party in which the presiding judge owned stock, id. at 129.

Nor would it be unfair to the parties to vacate the judgment. In particular, the fact that the dispute may need to be retried in the district court rather than in arbitration cannot be held against TIG. TIG tried to appeal from the Court's February 2, 2017 decision compelling arbitration but Judge Ramos denied the request, requiring an appeal to be taken upon confirmation of any arbitral award. Dkt. No. 29. TIG thus sought to expedite determination of the threshold forum dispute.

Moreover, the issue cannot be left to the Second Circuit in the currently pending appeal. Because Judge Ramos's disqualification is uncontested, it would not be appropriate for the Second Circuit to review his rulings now. And there is no occasion for the Court to consider the recusal issue, since there is no district court ruling on the subject yet. Thus, this is not a scenario in which an appellate court, reviewing a denial of a motion for recusal of the trial court judge, may consider that denial under a "harmless error" standard as a result of the appellate court's

decision on the merits. See Faulkner v. Nat'l Geographic Enters., Inc., 409 F.3d 26, 42 n.10 (2d Cir. 2005) (holding that denial of motion asserting the existence of a basis for recusal, which was ultimately deemed meritless, "was at most harmless error" given the disposition of the claims on appeal). In contrast to the situation in Faulkner, here it is undisputed that Judge Ramos's stock ownership in Mobil "would have required recusal." Dkt. 56 at 1.

Given the facts of this case, the proper remedy for Judge Ramos's disqualification in this matter is to vacate his orders and the final judgment entered in Mobil's favor. As noted by both the Supreme Court of the United States and the Second Circuit, the purpose of Section 455 is to promote public confidence in the integrity of the judicial process. Denial of relief to TIG would not only be an injustice to TIG, but it would also increase the risk of undermining the public's confidence in the judicial process. TIG is entitled to have this case and the relevant issues heard by a judge with no interest in the ultimate result. As such, the orders and final judgment in this matter must be vacated.

Finally, TIG notes that, in the first instance, it seeks only an indicative ruling under Federal Rule of Civil Procedure 62.1(a)(3). Under that rule, when a motion for relief has been made that a district court "lacks authority to grant because of an appeal that has been docketed and is pending," the district court may nonetheless hear the motion. Fed. R. Civ. P. 62.1. If it decides "either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue," the district court may issue an order so stating. Fed. R. Civ. P. 62.1(a)(3). As the Advisory Committee notes state, Rule 62.1 "adopt[ed] . . . the practice that most courts follow when a party makes a Rule 60(b) motion to vacate a judgment that is pending on appeal." Fed. R. Civ. P. 62.1 advisory committee note; see also id.

("Experienced lawyers often refer to the suggestion for remand as an 'indicative ruling.'"). TIG submits that this "clear procedure," id., is the appropriate course here.

## CONCLUSION

For the above reasons, TIG respectfully requests that the Court issue an indicative ruling under Federal Rule of Civil Procedure 62.1(a)(3) stating either (i) that it would grant TIG's motion to vacate the order compelling arbitration (Dkt. No. 21), the order confirming the Arbitral Award and imposing prejudgment interest (Dkt. No. 49), and the final judgment (Dkt. No. 52) in this matter if the Second Circuit remands for that purpose; (ii) or that TIG's motion at least raises a substantial issue regarding the justification for vacatur, as well as any other relief the Court deems necessary.

Dated: August 13, 2021

/s/ Daniel P. Goldberg

Daniel P. Goldberg
Daniel M. Sullivan
HOLWELL, SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, New York 10017
(646) 837-5151
dgoldberg@hsgllp.com
dsullivan@hsgllp.com

Christopher R. Carroll
Jillian G. Dennehy
KENNEDYS CMK LLP
570 Lexington Avenue
New York, New York 10022
(908) 848-6310
christopher.carroll@kennedyslaw.com
jillian.dennehy@kennedyslaw.com

*Attorneys for Respondent TIG Insurance Company*