UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EXXONMOBIL OIL CORPORATION,

                             Petitioner,

– against –

TIG INSURANCE COMPANY,

                             Respondent.

CIVIL ACTION NO. 1:16-cv-09527-MKV

## EXXONMOBIL OIL CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO TIG INSURANCE COMPANY'S MOTION TO VACATE CERTAIN ORDERS AND THE FINAL JUDGMENT

COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000

*Counsel for Petitioner*
*ExxonMobil Oil Corporation*

August 27, 2021

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

    A.    There Was No § 455 Violation, and Any Such Violation Would Be Harmless Error ................................................................................................... 2

    B.    The Court Should Deny TIG's Motion or, Alternatively, Defer Considering It Because the "Harmless Error" Question Currently is Before the Court of Appeals .................................................................................. 4

II.  BACKGROUND .................................................................................................................. 5

III. ARGUMENT ....................................................................................................................... 8

    A.    There Is No Reason to Conclude That Judge Ramos Knowingly Violated 28 U.S.C. § 455(b)(4); Therefore, There Was No Violation of § 455(a) ............... 8

    B.    Judge Ramos's Failure to Recuse Himself Was, At Most, Harmless Error ......... 11

        1.    The Court of Appeals' Forthcoming Decision Will Render the Alleged Disqualification Harmless and Moot ........................................... 11

        2.    The Court Should Deny or, Alternatively, Defer Consideration of the Motion to Vacate ................................................................................ 15

IV.  CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Camacho v. Autoridad de Telefonos de Puerto Rico*,
   868 F.2d 482 (1st Cir. 1989) ..................................................................................................14

*Chase Manhattan Bank v. Affiliated FM Ins. Co.*,
   343 F.3d 120 (2d Cir. 2003) ........................................................................................... *passim*

*In re: Cont'l Airlines Corp.*,
   901 F.2d 1259 (5th Cir. 1990) ................................................................................................15

*Faulkner v. Nat'l Geographic Enters. Inc.*,
   409 F.3d 26 (2d Cir. 2005) .............................................................................................. *passim*

*Kendall v. Daily News Publ'g Co.*,
   716 F.3d 82 (3d Cir. 2013) .....................................................................................................14

*Liljeberg v. Health Servs. Acquisition Corp.*,
   486 U.S. 847 (1988) ........................................................................................................ *passim*

*Marcus as Trustee of Grace Preferred Litig. Tr. v. Smith*,
   755 F. App'x 47 (2d Cir. 2018) ...................................................................................... *passim*

*Parker v. Connors Steel Co.*,
   855 F.2d 1510 (11th Cir. 1988) .......................................................................................13, 15

*Patterson v. Mobil Oil Corp.*,
   335 F.3d 476 (5th Cir. 2003) ..................................................................................................14

**Statutes**

28 U.S.C. § 455 ............................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 60(b)(6) .................................................................................................... 1, 12

Fed. R. Civ. P. 62.1(a) ............................................................................................1, 5, 15, 16

## I. INTRODUCTION

Petitioner ExxonMobil Oil Corporation ("Mobil") submits this Memorandum in opposition to Respondent TIG Insurance Company's Motion to Vacate Certain Orders and the Final Judgment pursuant to Fed. R. Civ. P. 60(b)(6). Dkt. 58, 59 ("Motion to Vacate"). The final judgment in this case was entered by the District Court (Ramos, J.) over a year ago, on May 26, 2020. Dkt. 52. Respondent ("TIG") filed its Notice of Appeal on June 23, 2020. Dkt. 53. The appeal has been fully briefed and is set for oral argument in the Court of Appeals on September 14, 2021, a little more than two weeks from now. This Court therefore lacks jurisdiction to grant TIG's Motion to Vacate. TIG accordingly seeks a limited "indicative ruling" pursuant to Fed. R. Civ. P. 62.1(a). As explained below, TIG's Motion to Vacate is entirely without merit and should be denied.

TIG filed its Motion to Vacate in reaction to a letter the Clerk of this Court, Ms. Ruby J. Krajick, delivered to the parties on July 29, 2021. Dkt. 56. In her letter, Ms. Krajick reported that "Judge Ramos informed me that it has been brought to his attention that while he presided over the case he owned stock in Exxon Mobil Corporation.[1] His ownership of stock neither affected nor impacted his decisions in this case. However, his stock ownership would have required recusal . . . and thus, Judge Ramos directed that I notify the parties of the conflict." *Id*. at 1.

In its Motion to Vacate, TIG does not dispute the fact that Judge Ramos's stock ownership "'neither affected nor impacted [Judge Ramos's] decisions in this case.'" Dkt. 59 at 7 (quoting from Ms. Krajick's letter). TIG also recognizes that Judge Ramos presided over the case not knowing that he owned Exxon Mobil stock: "that conflict was not intentional." *Id*. at 10. But, unhappy with Judge Ramos's orders and final judgment in Mobil's favor, TIG seizes on "these

---

[1] Exxon Mobil Corporation is Petitioner Mobil's publicly-traded parent company, as disclosed in Petitioner Mobil's Corporate Disclosure Statement filed on December 9, 2016. Dkt. 3.

unfortunate circumstances" (Dkt. 59 at 4) to make its Motion to Vacate in the hope of wiping out nearly *five years* of arbitration and related litigation proceedings; sidestepping *its own* fully briefed appeal about to be heard by the Court of Appeals *de novo*; and securing a "do-over" with a new judge of this Court who, TIG hopes, can be persuaded to (effectively) overrule Judge Ramos and deny the petition to compel arbitration Judge Ramos rightly granted four and one-half years ago (all while delaying even longer TIG's payment of the insurance proceeds a three-person arbitral Tribunal *unanimously* awarded to Mobil two years ago this month).

The manifest unfairness, gross inefficiency, and waste of judicial resources inherent in TIG's proposition is glaring. More important, TIG's Motion to Vacate utterly fails as a matter of governing law.

**A.     There Was No § 455 Violation, and Any Such Violation Would Be Harmless Error**

TIG's Motion fails for two reasons—each of which, on its own, is wholly dispositive here.

<u>First</u>, Judge Ramos did not violate 28 U.S.C. § 455, and he is not disqualified, nor should the Court retroactively disqualify him.[2] TIG argues its case as though there was a *per se* violation of § 455 here. There certainly was not. There was no violation of § 455(b)(4), which obligates a judge to disqualify himself if he "*knows* that he, individually or as a fiduciary . . . has a financial interest in the subject matter in controversy or in a party to the proceeding . . ." (emphasis added). As Judge Ramos's financial interest in Exxon Mobil was only recently brought to his attention, the actual knowledge requirement embodied in § 455(b)(4) is not satisfied, and the statute does not apply. *See Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir. 2003).

---

[2] TIG's repeated assertion that it is "uncontested" and there is "no dispute" that "Judge Ramos was disqualified from presiding over this matter" (Dkt. 59 at 7, 8, 10, 11) *is not tru*e, and TIG misleads the Court by repeatedly making that representation. As explained above, Mobil disputes and contests TIG's claim that Judge Ramos was and/or should be disqualified. Mobil does, of course, recognize and accept that Judge Ramos effectively recused himself as of July 29, 2021, and the Court properly assigned a new judge to preside over the case going forward.

2

Nor was there a violation of § 455(a), which requires disqualification if there is an appearance of partiality, and allows for *retroactive* disqualification in cases where circumstances calling a judge's impartiality into question come to light only after he or she has decided the case. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858–62 (1988). Contrary to TIG's imaginary *per se* rule, § 455(a) requires retroactive disqualification only if "(i) a reasonable person, knowing all the facts, would conclude that the judge had a disqualifying interest in a party under Section 455(b)(4), *and* (ii) . . . *would also conclude that the judge knew* of that interest and yet heard the case." *Chase*, 343 F.3d at 128 (emphasis added). There is no evidence here even suggesting, let alone supporting, such a radical conclusion—i.e., that Judge Ramos violated § 455(b)(4) by proceeding to hear the case *knowing* that he had a disqualifying financial interest that required him to recuse himself. Because there is no reason for a reasonable person to conclude that Judge Ramos knowingly violated § 455(b)(4), there was no violation of § 455(a) requiring disqualification.

Second, and of paramount importance, *even if* Judge Ramos could, in hindsight, be found to have violated § 455(a), it "was at most harmless error." *See Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 42 n.10 (2d Cir. 2005); *see also Marcus as Trustee of Grace Preferred Litig. Tr. v. Smith*, 755 F. App'x 47, 52 (2d Cir. 2018).

In its appeal, TIG has raised (and only raised) two purely legal issues, both of which are subject to plenary review by the Court of Appeals: (i) whether Judge Ramos properly construed a contract to require arbitration, and (ii) whether he properly granted prejudgment interest mandated by New York law despite a contract provision TIG argues precludes interest. The Court of Appeals currently is reviewing and about to hear and decide these purely legal issues *de novo*. *If* there was a disqualifying conflict of interest in this case, the Court of Appeals' "*de novo* review . . . alleviates

3

any risk that the public's confidence in the judicial process will be undermined by [that] alleged conflict." *Marcus*, 755 F. App'x at 52. Once the Court of Appeals independently decides those two legal questions on appeal anew—whether by affirming or reversing the judgment on its merits—the error TIG now claims based on Judge Ramos's failure to recuse himself will be rendered harmless and moot. *See Faulkner*, 409 F.3d at 42 n.10. TIG will then have its "remedy" dispelling any conceivable appearance of impropriety, and its Motion to Vacate will be moot.

**B.    The Court Should Deny TIG's Motion or, Alternatively, Defer Considering It Because the "Harmless Error" Question Currently is Before the Court of Appeals**

As TIG notes (Dkt. 59 at 5 n.1), on the day it filed its Motion to Vacate, TIG filed a Motion to Hold the Appeal in Abeyance before the Court of Appeals, asking that Court to cancel the upcoming oral argument and suspend further proceedings pending the outcome of its Motion to Vacate. Because the Court of Appeals' impending decision on the merits will serve to promptly cure and render moot any appearance of partiality that might arguably arise from Judge Ramos's recent disclosure, Mobil has filed an Opposition to TIG's abeyance motion, and has asked the Court of Appeals to continue with its plenary review of the two legal issues on appeal, reach its own independent decision on the merits and, in that way, render harmless any possible appearance of partiality and thus moot TIG's Motion to Vacate. *See ExxonMobil Oil Corp. v. TIG Ins. Co.*, No. 20-1946, Dkt. 80 (2d Cir. Aug. 23, 2021). To date, the Court of Appeals has not acted on TIG's abeyance motion or Mobil's opposition thereto.

Mobil asks that this Court deny TIG's Motion to Vacate given that any appearance of impartiality is about to be rendered harmless error by the Court of Appeals. But, alternatively, should the Court wish to first hear from the Court of Appeals in relation to the pending Motion to Hold the Appeal in Abeyance, Mobil asks that this Court defer considering TIG's Motion until the Court of Appeals rules. Fed. R. Civ. P. 62.1(a)(1).

4

## II.     BACKGROUND

Mobil has incurred substantial costs and legal liability to pay damages in a series of product liability lawsuits alleging property damage to drinking water wells and natural water resources allegedly caused by gasoline containing MTBE, an oxygenate at one time added to gasoline in order to comply with federal clean air mandates. TIG issued a liability insurance policy to Mobil that covers Mobil's MTBE losses. Mobil made an insurance claim under the TIG policy, which TIG denied. Mobil therefore initiated arbitration pursuant to a policy provision mandating binding arbitration. When TIG refused to arbitrate, Mobil commenced this action, filing its Petition to Compel Arbitration nearly five years ago, on December 9, 2016. Dkt. 1.

Judge Ramos heard oral argument on Mobil's Petition on February 1, 2017, and then delivered his decision from the bench, reading his substantial opinion into the record. Dkt. 22. Judge Ramos construed the relevant terms of the TIG insurance policy and concluded that the policy provides for mandatory arbitration. *Id.* Judge Ramos therefore granted Mobil's Petition and ordered the parties to submit their dispute to binding arbitration. Dkt. 21, 22.

The parties proceeded to arbitrate the numerous issues put into dispute by TIG's denial of Mobil's claim to insurance coverage for its MTBE losses. A two-day merits hearing was held in New York on April 17-18, 2019, before a Tribunal of three highly reputable arbitrators, including one appointed by each party and a neutral chair. On August 14, 2019, the arbitral Tribunal issued a *unanimous* 46-page Award in Mobil's favor, requiring that TIG pay Mobil the full amount of the TIG policy limit, $25 million. Dkt. 38-1.

On November 21, 2019, Mobil filed a Motion For Order Confirming Arbitration Award, and For Entry of Final Judgment Including Prejudgment Interest. Dkt. 36, 37, 38. On December 4, 2019, TIG filed a Cross-Motion to Vacate the Arbitration Award because, TIG said, the arbitral Tribunal had "manifestly disregarded the law." Dkt. 39, 40, 41, 42.

5

On May 18, 2020, Judge Ramos issued the District Court's 21-page Opinion and Order denying TIG's Motion to Vacate the Arbitration Award, granting Mobil's Motion to Confirm the Award, and granting Mobil's request that the final judgment include prejudgment interest. Dkt. 49. On May 26, 2020, Judge Ramos entered final judgment in favor of Mobil for just over $33 million, including the $25 million policy limit and just over $8 million in prejudgment interest. Dkt. 52. On June 19, 2020, TIG filed its Notice of Appeal from the judgment. Dkt. 53.

TIG has raised just two issues on appeal: it seeks (i) reversal of the District Court's order compelling arbitration, and (ii) vacatur of the judgment confirming the arbitration award to the extent the District Court granted prejudgment interest, all on the basis of legal questions subject to *de novo* review on appeal. *See ExxonMobil Oil Corp. v. TIG Ins. Co.,* No. 20-1946, Dkt. 32, Appellant's Br. at 20–21, 58 (2d Cir. Oct. 6, 2020). The two discrete aspects of the District Court's judgment under review—an order compelling arbitration as required by contract and a grant of prejudgment interest as mandated by New York law not precluded by contract—are subject to plenary review by the Court of Appeals. Therefore, the Court of Appeals will address those two issues completely anew, and will independently confirm the correctness (or not) of the District Court's judgment in an indisputably impartial, controlling decision. Moreover, that independent, indisputably impartial decision is imminent—the appeal is fully briefed, and oral argument is scheduled to take place on September 14, 2021. *Id*., Dkt. 79 (2d Cir. Aug. 23, 2021).

On July 29, 2021, the Clerk of the District Court notified the parties that Judge Ramos had informed her that "it has been brought to [Judge Ramos's] attention that while he presided over the case he owned stock in ExxonMobil Corporation." Dkt. 56 at 1. "His ownership of stock neither affected nor impacted his decisions in this case." *Id*. The Clerk invited the parties to respond to Judge Ramos's disclosure "[s]hould [they] wish to" do so. *Id*. at 2.

6

Mobil responded with a letter addressed to the Clerk of the District Court and to the Clerk of the Court of Appeals, Ms. Catherine O'Hagan Wolfe, who had been copied on the District Court's July 29 letter to the parties. Dkt. 60. In its letter, Mobil explained first that Judge Ramos was not disqualified when he presided over this case, as the Clerk of the District Court's July 29 letter indicates that he did not know he owned Exxon Mobil stock at the time; and, second, that Judge Ramos should not be *retroactively* disqualified, nor should his judgment be nullified, given that there is no basis on which an objective observer would conclude that he in fact did know of his financial interest in Exxon Mobil, but heard the case regardless. *Id*. at 2, 3-4.

But even more important, and wholly dispositive here, Mobil explained that, even if there were a violation of 28 U.S.C. § 455(a) based on an appearance of partiality (i.e., even though Judge Ramos apparently was unaware of the circumstances creating the appearance of impropriety at the time he presided over the case), that violation "was at most harmless error." Dkt. 60 at 2, 4–6 (citing, *inter alia*, *Faulkner*, 409 F.3d at 42 n.10).

As Mobil also related in its August 13, 2021 letter to the Clerks of Court, prior to providing Mobil's response to Judge Ramos's disclosure:

> Counsel for Mobil asked TIG to agree that Judge Ramos's failure to recuse himself was, if error at all, harmless error not warranting any remedy given the nature and scope of the Court of Appeal[s'] ongoing plenary review and unquestionably impartial decision addressing the issues on appeal *de novo*. Counsel for Mobil proposed that the parties jointly inform the Court of Appeals and the District Court that, given that any such error by Judge Ramos was harmless, the pending appeal should proceed on its merits without any need for ancillary proceedings. Counsel for TIG declined to so agree, and informed Mobil that TIG intends to file a motion in the District Court asking that court to vacate the judgment pursuant to Fed. R. Civ. P. 60(b).

Dkt. 60 at 3.

On August 13, 2021, TIG filed its Motion to Hold the Appeal in Abeyance in the Second Circuit (*see* Motion to Vacate at 2 n.1). *ExxonMobil Oil Corp. v. TIG Ins. Co.*, No. 20-1946, Dkt. 74 (2d Cir. Aug. 13, 2021). Mobil filed its Opposition to TIG's Motion to Hold the Appeal in Abeyance on August 23, 2021. *Id.*, Dkt. 80 (2d Cir. Aug. 23, 2021).

In its Opposition to TIG's Motion to Hold the Appeal in Abeyance, Mobil has requested that the Second Circuit deny TIG's motion, that oral argument set for September 14, 2021 proceed, and that the Court hear and decide TIG's appeal on its merits in relation to the judgment entered below and thus render harmless and moot any error by Judge Ramos in not recusing himself. *Id.*, Dkt. 80 at 2, 11 (2d Cir. Aug. 23, 2021). The Court of Appeals has not yet acted on TIG's Motion to Hold the Appeal in Abeyance or Mobil's Opposition to that Motion.

### III.  ARGUMENT

**A.  There Is No Reason to Conclude That Judge Ramos Knowingly Violated 28 U.S.C. § 455(b)(4); Therefore, There Was No Violation of § 455(a)**

Judge Ramos, in not recusing himself, did not act contrary to federal law governing judicial disqualification. First, there does not appear to be any dispute that Judge Ramos, in fact, was not biased in this matter. In her letter notifying the parties of Judge Ramos's ownership of Exxon Mobil stock, Ms. Krajick reported that "[Judge Ramos's] ownership of stock neither affected nor impacted his decisions in this case." Dkt. 56 at 1. TIG appears to agree. Dkt. 59 at 10.

Second, there does not appear to have been any violation of 28 U.S.C. § 455(b)(4). Section 455(b)(4) provides that a federal judge "shall also disqualify himself in the following circumstances: . . . ¶ (4) He *knows* that he, individually or as a fiduciary . . . has a financial interest in the subject matter in controversy or in a party to the proceeding . . . " (emphasis added). As the Second District has noted, "Section 455(b)(4) embodies an *actual knowledge* test regarding

8

disqualifying circumstances and provides a bright line as to disqualification based on a *known* financial interest in a party . . . ." *Chase*, 343 F.3d at 127 (emphasis added).

The Clerk's notification letter reports that "Judge Ramos informed me that it has been brought to his attention that while he presided over the case he owned stock in ExxonMobil Corporation" and that "Judge Ramos directed that I notify the parties of the conflict." Dkt. 56 at 1. The plain implication is that Judge Ramos was not aware of his financial interest in Exxon Mobil until that circumstance was recently "brought to his attention," at which time he promptly directed the Clerk to notify the parties. Thus, because Judge Ramos did not know of his financial interest while he presided over the case, he did not violate 28 U.S.C. § 455(b)(4). Again, TIG appears to agree. Dkt. 59 at 8 and 10 ("such ownership[ ] 'would have required recusal' *if known at the time*." "Judge Ramos's previously undisclosed financial interest in Mobil . . . was *not intentional* . . . .") (emphasis added).

The courts have held, however, that where such a disqualifying interest later comes to light, 28 U.S.C. § 455(a)—which does not include a scienter element—may *under limited circumstances* be applied *retroactively* in relation to an already-entered judgment. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988).

Section 455(a) requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In *Liljeberg*, the Supreme Court held that § 455(a) can be violated based on an appearance of partiality even though the judge in fact did not know of the circumstances creating the appearance of impropriety. *Liljeberg*, 486 U.S. at 859–861. "If it would appear to a reasonable person that a judge *has knowledge* of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists . . . ." *Id.* at 860 (citation and internal quotation marks omitted, emphasis added). "Under

9

section 455(a), therefore, recusal is required even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case if a reasonable person, knowing all the circumstances, *would* expect that the judge *would* have *actual* knowledge." *Id.* at 860-861 (same).

In *Chase*, the Court of Appeals considered a case in which a judge did not realize that the party before him (Chemical Bank) had been merged into a company in which he owned stock (Chase Manhattan), even though the public record and the court record indicated as much quite clearly and quite often, and *the judge's own findings of fact* strongly suggested that he *did* know that "Chemical" had become "Chase." *See* 343 F.3d at 123, 125–26. Building on *Liljeberg*, the Second Circuit provided an exacting standard for retroactive, post-judgment disqualification in relation to stock ownership:

> We hold that an appearance of partiality requiring disqualification under Section 455(a) results when the circumstances are such that: (i) a reasonable person, knowing all the facts, would conclude that the judge had a disqualifying interest in a party under Section 455(b)(4), *and* (ii) such a person *would also conclude that the judge knew of that interest* and yet heard the case. *In short, we hold that Section 455(a) applies when a reasonable person would conclude that a judge was violating Section 455(b)(4).*

*Chase*, 343 F.3d at 128 (emphasis added).

While TIG cites *Chase*, TIG fails to acknowledge the *actual standard* for retroactive disqualification prescribed by the Second Circuit in *Chase*, and TIG does not even attempt to argue that a reasonable, objective person has reason to and so "*would* conclude that [Judge Ramos] *knew* of" his financial interest in ExxonMobil, "and yet heard the case" knowingly "violating Section 455(b)(4)." *Id*. (emphasis added). TIG does not make such an argument because it *cannot* make such an argument—there is nothing in Ms. Krajick's letter reporting that Judge Ramos just learned that he owned Exxon Mobil stock when he presided over the case that would support such an extraordinary conclusion. The factual record in this case simply does not provide a basis to find

10

that a reasonable, objective observer would conclude that Judge Ramos *in fact knew* of his ownership interest in Exxon Mobil and yet heard the case, regardless. Thus, there is no demonstrable violation of § 455(a).

What TIG does do is lift highly critical language from the *Chase* decision describing the conduct of the judge in *that* case—which truly was extraordinarily reckless to the point where it was hard to believe the judge genuinely did not realize that he owned stock in one of the parties— and cavalierly level that invective against Judge Ramos *without any factual basis*: "As in Chase Manhattan Bank, the violation here is 'neither insubstantial nor excusable.'" Dkt. 59 at 10. TIG does Judge Ramos a great disservice by making this charge without any evidence or legitimate reason to do so. To establish a violation of § 455(a), TIG was required to show that an objective observer *would* conclude that Judge Ramos *in fact knew* he owned stock in Mobil at the time he presided over this case and yet heard the case regardless, knowingly violating § 455(b)(4). *Chase*, 343 F.3d at 128. TIG has made no such showing. TIG's Motion to Vacate must be denied.

**B.     Judge Ramos's Failure to Recuse Himself Was, At Most, Harmless Error**

> **1.     The Court of Appeals' Forthcoming Decision Will Render the Alleged Disqualification Harmless and Moot**

*Even if* Judge Ramos violated § 455(a), no remedy is required or needed under the circumstances of this case. As noted, the appeal that TIG lodged over a year ago has been fully briefed to the Second Circuit, and oral argument is scheduled to take place in roughly two weeks, on September 14, 2021. That appeal concerns just two discrete issues, each of which presents a pure question of law (contract interpretation *sans* extrinsic evidence) subject to plenary review by the Court of Appeals. Once the Court of Appeals reviews and decides those issues *de novo*, as it is about to do, any error by Judge Ramos in not recusing himself will be "at most harmless error." *Faulkner*, 409 F.3d at 42 n.10; *accord*, *Marcus*, 755 F. App'x at 52.

11

The Court of Appeals' "*de novo* review . . . alleviates any risk that the public's confidence in the judicial process will be undermined by the alleged conflict" below. *Marcus*, 755 F. App'x at 52. Thus, once the Court of Appeals independently decides the two legal questions on appeal anew—whether by affirming or vacating the judgment below on its legal merits—the error that TIG now claims based on Judge Ramos's failure to recuse will be rendered harmless and moot. *See Faulkner*, 409 F.3d at 42 n.10. Proceeding in that fashion is the best and most efficient "remedy" for any error here.

Without question, not every violation of § 455 warrants a remedy:

> A conclusion that a statutory violation [of § 455(a)] occurred [*i.e.*, an objective observer knowing all the facts would have questioned the District Court's impartiality] does not, however, end [the reviewing court's] inquiry. As in other areas of the law, there is surely room for *harmless error* committed by busy judges who inadvertently overlook a disqualifying circumstance. *There need not be a draconian remedy for every violation of § 455(a)*.

*Liljeberg*, 486 U.S. at 862 (emphasis and bracketed material added).

In *Liljeberg*, a party sought to be relieved of a final judgment entered by a judge who presided over the case not recognizing his personal interest in the outcome of the case (as a trustee who owed a fiduciary duty to an interested party), creating an *ex post facto* appearance of partiality in violation of § 455(a). The Supreme Court noted that the broad authority to grant relief from a judgment provided by Fed. R. Civ. Proc. § 60(b)(6) "should only be applied in 'extraordinary circumstances.'" *Liljeberg*, 486 U.S. at 864 (citation omitted). The Court held:

> We conclude that in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider [i] the risk of injustice to the parties in the particular case, [ii] the risk that the denial of relief will produce injustice in other cases, and [iii] the risk of undermining the public's confidence in the judicial process.

*Liljeberg*, 486 U.S. at 864 (citation omitted, bracketed numbers added).

12

There is no risk of any injustice to TIG should the judgment stand and be reviewed by the Court of Appeals. TIG has not identified any such injustice. Rather, allowing the Court of Appeals to affirm (or vacate) the judgment *on its legal merits,* after plenary review, would be perfectly just. Indeed, given that the issues on appeal are purely legal and subject to plenary review, and the Court of Appeals is fully equipped and perfectly positioned to determine those questions *de novo*, no just purpose would be served were the Court of Appeals to refrain from doing so, and instead remand so that the District Court might consider these issues all over again and the parties (after inordinate delay and expense) might lodge the very same appeal on the same two issues all over again. Rather, the only "risk of injustice" here is that "it would be unfair to deprive [Mobil] of [its] judgment under the circumstances of this case." *See Parker v. Connors Steel Co.*, 855 F.2d 1510, 1526 (11th Cir. 1988) ("It would . . . be ridiculous to remand this case and reassign it to another judge after we have already exercised plenary review and have concluded that summary judgment was proper."); *see also Liljeberg*, 486 U.S. at 868 (vacatur may be appropriate "unless . . . it would otherwise be unfair to deprive the prevailing party of its judgment").

Nor has TIG identified any risk that proceeding with the appeal—thereby remedying any appearance of partiality by rendering Judge Ramos's failure to recuse, at worst, harmless error and moot—would lead to injustice in any other cases. *See Marcus*, 755 F. App'x at 52. Rather, TIG's Motion to Vacate in the District Court rests heavily if not entirely on the third prong of *Liljeberg*'s harmless error standard: "the risk of undermining the public's confidence in the judicial process." *See* Dkt. 59 at 10–11.

As noted, the Second Circuit has held that, where it independently reviews and confirms the correctness of a lower court's decision, a judge's failure to recuse himself below in violation of § 455(a) is harmless and moot. *Faulkner* at 42 n.10; *accord*, *Marcus* at 52. The same is equally

13

true should the Court of Appeals give plenary review to purely legal issues and independently resolve them in a fashion requiring reversal on the merits. In either instance, the Court of Appeals' *de novo* review and impartial decision renders the error below harmless. *See also, e.g.*, *Camacho v. Autoridad de Telefonos de Puerto Rico,* 868 F.2d 482, 490 (1st Cir. 1989) ("Here, the judge performed no factfinding and exercised no discretion. He determined as a matter of law that plaintiffs' complaint was insufficient. A court of appeals reviews such determinations *de novo*. Since we have independently confirmed the correctness of the lower court's decision . . . the judge's refusal to recuse himself was, at worst, harmless error. Therefore, the matter of disqualification is moot."); *Kendall v. Daily News Publ'g Co.*, 716 F.3d 82, 97 (3d Cir. 2013) ("Plenary review allows us to find harmlessness because '[a]ny bias which may have infected the district court's decision is fully remedied by our consideration of the motions.'" (citation omitted)); *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 485 (5th Cir. 2003) ("Because we review a summary judgment ruling *de novo*, using the same standards as the district court, the parties are guaranteed a fair, impartial review of the merits of the ruling.").

The same is true in this case. The Court of Appeals' plenary review of the two purely legal issues on appeal—both of which Judge Ramos decided *without any evidentiary hearing or fact-finding*—will moot any error resulting from Judge Ramos failing to recuse himself. Any such error is by definition harmless error not requiring or warranting any remedy other than the Court of Appeals' own review of and decision on the legal issues on appeal. Given that no remedy is needed, there is no just reason to grant TIG's Motion to Vacate.

Moreover, this case has been pending—and Mobil has not been paid the insurance proceeds an arbitral panel unanimously awarded—for nearly five years now, frustrating the private and public interests in arbitration: efficiency and cost-effectiveness. If, at this point, the parties were

14

forced to return to the District Court to, in essence, start all over again for reasons not related to the merits of the case or to any showing of harmful error, the risk of undermining the public's confidence in the judicial process would be substantial. *See Parker*, 855 F.2d at 1527; *In re: Cont'l Airlines Corp.*, 901 F.2d 1259, 1263 (5th Cir. 1990).

That risk would be all the greater given that the parties would be forced to incur substantial additional expense and delay, and substantial public/judicial resources (time and money) would be wastefully expended, all just to bring the case back to the Court of Appeals (again) months or years from now to hear and resolve the same two discrete, purely legal issues the Court of Appeals currently is poised to hear and resolve now.

Thus, the third *Liljeberg* consideration—"the risk of undermining the public's confidence in the judicial process"—counsels not only in favor of proceeding with the present appeal from the current judgment, given that any appearance of partiality will be mooted and rendered harmless by proceeding in that fashion, as explained above; it also counsels against proceeding as TIG proposes, given the additional delay and unnecessary costs (private and judicial) to be incurred all just to get back to exactly where matters currently stand.

### 2. The Court Should Deny or, Alternatively, Defer Consideration of the Motion to Vacate

As explained above at § II.A., TIG's Motion to Vacate fails entirely because there is no demonstrable violation of 28 U.S.C. § 455. For that reason alone, TIG's Motion should be denied pursuant to Fed. R. Civ. P. 62.1(a)(2).

If this Court were to conclude that TIG has established a violation of § 455(a), or if the Court were inclined to deny TIG's Motion solely on "harmless error" grounds without deciding whether there was such a violation, there are two ways to proceed. The Court could and should deny the Motion pursuant to Fed. R. Civ. P. 62.1(a)(2) for the reasons explained above—the Court

of Appeals is about to re-decide the two legal issues decided by Judge Ramos and, therefore, whether the Court of Appeals affirms or reverses the judgment, the parties soon will have the benefit of an unquestionably fair and impartial decision on the merits, alleviating any appearance of impropriety in the District Court, and rendering any error on Judge Ramos's part harmless and moot.

Alternatively, given that TIG has moved the Court of Appeals to hold the appeal in abeyance, Mobil has opposed that motion asking that the appeal proceed and the Court of Appeals decide the issues *in order to remedy and moot any recusal error below*, and the Court of Appeals has not yet ruled on the abeyance question or otherwise indicated how it wishes to proceed in this regard (*see ante* at 4, 8), the District Court could defer consideration of the Motion to Vacate pursuant to Fed R. Civ. P. 62.1(a)(1) pending further guidance from the Court of Appeals.

## IV.   CONCLUSION

For the foregoing reasons, Mobil respectfully requests that the Court deny TIG's Motion to Vacate, both because TIG has not established any violation of 28 U.S.C. § 455, and because any such violation was at most harmless error given that that Court of Appeals is reviewing the two legal issues on appeal *de novo*, and its impending decision after plenary review will remedy and moot any error by Judge Ramos in not recusing himself from this case. In the alternative, Mobil requests that the Court defer consideration of the Motion to Vacate pending further guidance from the Court of Appeals in relation to Mobil's request that the appeal continue unabated so that the parties will have the Second Circuit's impartial decision rendering any such error harmless.

16

Dated: August 27, 2021

Respectfully submitted,

COVINGTON & BURLING LLP

By: *s/Donald W. Brown*
    Donald W. Brown

P. Benjamin Duke
Andrew W. Hahn
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000
pbduke@cov.com; ahahn@cov.com

Donald W. Brown
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94111-5356
(415) 591-7063
dwbrown@cov.com

Allan B. Moore
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4956
(202) 662-5575
abmoore@cov.com

*Counsel for Petitioner*
*ExxonMobil Oil Corporation*