**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EXXONMOBIL OIL CORPORATION,<br><br>　　　　　　Petitioner,<br><br>　　　　v.<br><br>TIG INSURANCE COMPANY,<br><br>　　　　　　Respondent. | Case No. 16-cv-09527 (MKV) |

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF TIG INSURANCE COMPANY'S MOTION TO VACATE CERTAIN ORDERS AND THE FINAL JUDGMENT**

---

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

A.   MOBIL FAILS TO EXPLAIN WHY JUDGE RAMOS WAS NOT CONFLICTED FROM PRESIDING OVER THIS MATTER................................................................... 2

B.   JUDGE RAMOS'S DISQUALIFYING CONFLICT WAS NOT HARMLESS ERROR.. 5

   1.   The Second Circuit Paused The Appeal And Directed This Court To Decide TIG's Motion To Vacate. .............................................................................................. 6

   2.   Mobil Fails To Identify Any Precedent In Which A District Court Found Harmless Error Under These Circumstances. .............................................................. 6

   3.   Letting The Judgment Stand Would Impair The Public's Confidence. ......................... 8

CONCLUSION................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

Camacho v. Autoridad de Telefonos de Puerto Rico,
  868 F.2d 482 (1st Cir. 1989) .................................................................................... 7, 8

Chase Manhattan Bank v. Affiliated FM Ins. Co.,
  343 F.3d 120 (2d Cir. 2003) .................................................................................... 3, 4, 7

Faulkner v. Nat'l Geographic Enters. Inc.,
  409 F.3d 26 (2d Cir. 2005) ...................................................................................... 6, 8

Kendall v. Daily News Pub. Co.,
  716 F.3d 82 (3d Cir. 2013) ...................................................................................... 7, 8

Liljeberg v. Health Servs. Acquisition Corp.,
  486 U.S. 847 (1988) ................................................................................................ passim

Marcus as Tr. of Grace Preferred Litig. Tr. v. Smith,
  755 F. App'x 47 (2d Cir. 2018) ............................................................................... 7, 8

Parker v. Connors Steel Co.,
  855 F.2d 1510 (11th Cir. 1988) ............................................................................... 7, 8

Patterson v. Mobil Oil Corp.,
  335 F.3d 476 (5th Cir. 2003) ................................................................................... 7, 8

**Statutes**

28 U.S.C. § 455 ............................................................................................................ passim

**Rules**

Federal Rule of Civil Procedure 62 ............................................................................. 10

**PRELIMINARY STATEMENT**

In response to Judge Ramos's disclosure that, at the time he ruled in Mobil's favor, he owned stock in Mobil and so had a debilitating conflict that "would have required recusal," (Dkt. No. 56 at 1), Mobil remarkably asks this Court to ignore all that and substitute Mobil's own judgment that there really was no conflict. The disclosure, says Mobil, lacks a strong enough factual basis for a reasonable person to conclude that Judge Ramos knew he had a financial interest in Mobil when he issued his decisions. Obviously, however, Judge Ramos believes differently, and Mobil is in no position and has no basis to second guess that judgment. Thus, an inquiry into Judge Ramos's financial holdings and the circumstances of his discovery of a conflict would not be a productive use of this Court's resources. Nor is Mobil correct that TIG has invented an "imaginary *per se* rule" to determine whether 28 U.S.C. § 455(a) has been violated. TIG quotes and applies the very same legal standard Mobil advances. At the end of the day, all of this is noise. What matters is that a debilitating conflict requiring recusal has been disclosed, and this Court must determine the remedy.

On that question, Mobil asks this Court to punt. Mobil claims the Second Circuit's *de novo* review of TIG's appeal of two legal issues—whether it was proper to compel arbitration and impose prejudgment interest on top of the arbitration award—will render any Section 455(a) violation harmless error. But since Mobil filed its Opposition, the landscape has changed considerably. Earlier this week, on August 30, 2021, the Second Circuit granted TIG's application to pause the appeal while this Court resolves TIG's Motion to Vacate. Dkt. No. 63. Thus, this Court must rule on TIG's Motion. And, in so doing, Mobil may not simply evade the question of a remedy based on a speculative supposition that, if the Second Circuit *were* to decide the present appeal, its ruling would make an admitted judicial conflict irrelevant. That

1

approach has no precedent and offends the fundamental interest, which the public and the judiciary share, in maintaining the appearance of regularity and propriety inherent in the fair administration of justice. This Court should not send the message to the public that judicial conflicts—even direct financial interests in one of the parties—are worthy of neither scrutiny nor remedy.

## ARGUMENT

### A.   MOBIL FAILS TO EXPLAIN WHY JUDGE RAMOS WAS NOT CONFLICTED FROM PRESIDING OVER THIS MATTER.

There can be no serious dispute that Judge Ramos was, in fact, disqualified from acting in this matter. Yet somehow Mobil insists on "contest[ing] TIG's claim that Judge Ramos was and/or should be disqualified." Mobil Opp. at 2 n.2; see also Mobil Ltr. (Dkt. No. 60) at 3–4. Mobil's core argument is that "TIG fails to acknowledge the *actual standard* for retroactive disqualification" under Section 455(a), and that this standard, properly applied, was not met here. Mobil Opp. at 10 (emphasis in original).

Mobil's position is perplexing. The letter sent by the Clerk of Court to the parties on July 29, 2021 described itself as the "*disclosure of a conflict* in this case." Dkt. No. 56 at 2 (emphasis added). Moreover, the letter plainly states that Judge Ramos's "stock ownership *would have required recusal* under the Code of Conduct for United States Judges," citing a "guidance for addressing *disqualification* that is not discovered until after a judge has participated in a case." Id. at 1–2 (emphases added).

Mobil offers absolutely no explanation or argument concerning the actual conflict disclosed in this letter. Instead, Mobil repeatedly tells this Court what the letter does *not* say.

Mobil first explains that the letter does not reflect a violation of 28 U.S.C. § 455(b)(4) because Judge Ramos did not know about his stock ownership in Mobil at the time he rendered

2

his decisions. Mobil Opp. at 8–9. Mobil has no basis for this assertion, as the present record does not reveal, one way or the other, whether Judge Ramos actually knew. Moreover, as TIG argues elsewhere, that is irrelevant under applicable law.

Mobil next turns to its overarching argument that Judge Ramos did not violate Section 455(a). If Judge Ramos did not violate Section 455(b)(4) or (a), what then is the "conflict" disclosed by the Clerk of Court? And why, as Mobil "recognize[s] and accept[s]," would Judge Ramos have "effectively recused himself as of July 29, 2021" if he had not been disqualified? Id. at 2 n.2. Mobil offers no answers to these questions.

Disregarding the letter's conclusion—which, to be clear, is plainly stated in the letter itself and not "radical[ly]" dreamt up by TIG—Mobil wrongly accuses TIG of having invented an "imaginary *per se* rule" for a Section 455(a) violation. Id. at 3. Section 455(a), Mobil emphasizes, is violated "only if '(i) a reasonable person, knowing all the facts, would conclude that the judge had a disqualifying interest in a party under Section 455(b)(4), *and* (ii) *would also conclude that the judge knew* of that interest and yet heard the case.'" Id. (quoting Chase Manhattan Bank v. Affiliated FM Ins. Co., 343 F.3d 120, 128 (2d Cir. 2003)) (emphasis in original). But TIG's opening brief cites the very same reasonable person standard Mobil espouses. See TIG Mot. at 4 ("recusal 'does not depend on whether the judge actually knew of facts creating an appearance of impropriety, *so long as the public might reasonably believe that he or she knew*'") (quoting Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 859–60 (1988)) (emphasis added). TIG does not endorse some other "*per se* rule," whatever that may mean.

Mobil concedes, as it must, that Section 455(a) "allows for *retroactive* disqualification in cases where circumstances calling a judge's impartiality into question come to light only after he

or she has decided the case." Mobil Opp. at 3 (citing Liljeberg, 486 U.S. at 858–62) (emphasis in original).  The daylight between the parties is under what circumstances that standard is met.  Mobil takes pains to frame the Liljeberg and Chase Manhattan Bank standards as "exacting" and satisfied only in "limited circumstances."  Id. at 9, 10.  Neither is true.  Courts examining Section 455(a) violations must always strive to "'satisfy the appearance of justice,'" an objective that, if anything, counsels for a liberal application of the standard.  TIG Mot. at 6 (quoting Liljeberg, 486 U.S. at 864).

More importantly, Mobil cites no case in which a court found that a judge's financial interest in one of the parties did not constitute a Section 455(a) violation.  To the contrary, in both cases Mobil cites—Liljeberg and Chase Manhattan Bank—the Supreme Court and Second Circuit both found that, where a judge holds a financial interest in a party and presides over a case, even without actually knowing of that interest, there is nevertheless a disqualifying appearance of impropriety.  See id. at 5–7.  Thus, although the question is whether a reasonable person aware of the circumstances would think the judge knew about the conflict, Mobil Opp. at 3, 9–10, clearly the reasonable person is not thought to be aware the ultimate fact whether, indeed, the judge did know.  Otherwise the objective standard of Liljeberg would become a subjective standard, and both Liljeberg and Chase Manhattan Bank would have come out the other way.

That is not all.  Both Liljeberg and Chase Manhattan Bank further reasoned that a judge's obligation to keep abreast of his financial interests reinforced the public's presumption that a judge is knowledgeable about them.  See Liljeberg, 486 U.S. at 867–68 (citing Section 455(c) and reasoning that "[a]lthough Judge Collins did not know of his fiduciary interest in the litigation, he certainly should have known."); Chase Manhattan Bank, 343 F.3d at 127

4

(discussing Section 455(c), which "imposes a duty upon a federal judge to 'inform himself about his personal and fiduciary financial interests . . . .'") (quoting Section 455(c)).  So too here.

The heart of the parties' disagreement, then, seems not to lie with the Section 455(a) standard itself, but rather its application here.  And as to this question, the real target of Mobil's Opposition seems not to be TIG, but rather Judge Ramos and the Clerk of Court, who concluded there had been a "conflict" that "would have required recusal"—a fact with which Mobil would like to disagree, though it has no evidentiary basis for doing so.  See Dkt. No. 56.  While the "factual record" in the letter does not lay bare all of the circumstances surrounding Judge Ramos's conflict and his discovery thereof, see Mobil Opp. at 10, that is not necessary in light of the letter's conclusion.  Mobil appears to all but invite a full-blown factual inquiry into Judge Ramos's personal circumstances, which would be an unnecessary, not to mention very personal, sideshow.  (It is Mobil's suggestion of such a full-blown inquisition, not TIG's acknowledgment of an undisputed conflict, that "does Judge Ramos a great disservice."  See id. at 3.)  There is no need to reach this point, for the reasonable person reading the Clerk of Court's letter would conclude that there had been a violation of Section 455(a).

**B.   JUDGE RAMOS'S DISQUALIFYING CONFLICT WAS NOT HARMLESS ERROR.**

Mobil next insists at length that "*[e]ven if* Judge Ramos violated § 455(a), no remedy is required" because TIG has appealed to the Second Circuit two "pure question[s] of law": whether arbitration was mandatory and the award of prejudgment interest proper.  Id. at 11 (emphasis in original).  In Mobil's view, "[O]nce the Court of Appeals independently decides the[se] two legal questions on appeal anew . . . the error that TIG now claims based on Judge Ramos's failure to recuse will be rendered harmless and moot."  Id. at 12.  In effect, Mobil argues that whenever there is an appeal of a conflicted judge's decision, the conflict should be

5

ignored, and so Mobil clings to the appeal as a pretext to dodge TIG's Motion to Vacate. Try as it might, however, Mobil cannot evade this Motion.

    **1.    The Second Circuit Paused The Appeal And Directed This Court To Decide TIG's Motion To Vacate.**

As noted above, the appeal has been paused by the Second Circuit pending this Court's decision on the Motion to Vacate. Dkt. No. 63. That court is therefore no longer "about to hear and decide" the appeal, to use Mobil's words. See Mobil Opp. at 3. With that development, Mobil no longer can ask this Court to defer resolution of TIG's Motion to Vacate. See id. at 16. The Second Circuit has given the "further guidance" Mobil awaited, and that guidance is that this Court must resolve TIG's Motion now. See id.

    **2.    Mobil Fails To Identify Any Precedent In Which A District Court Found Harmless Error Under These Circumstances.**

Yet Mobil appears to be advancing a still bolder proposition. It contends that because, according to Mobil, any violation of Section 455(a) would be "harmless error" on appeal, whenever that appeal might be heard, this Court should either impose no remedy if it determines a Section 455(a) violation occurred, or—more troublingly—should not even bother to "decid[e] whether there was such a violation" at all. Id. at 15. Mobil's premise is wrong, and in any event the law does not permit this Court to so refrain.

Mobil cites no case—none—in which a court found that a judge's refusal to recuse based on a direct financial interest in the party in whose favor the judge ruled was forgiven as "harmless error," not to mention any case where the judge agrees that he had a debilitating conflict at the time he ruled that would have required recusal. The putative conflicts in the cases Mobil cites—several of which were determined not to be conflicts at all—were far less severe and clear-cut. See Faulkner v. Nat'l Geographic Enters. Inc., 409 F.3d 26, 41–42 (2d Cir. 2005) (judge, when in private practice, had represented a subsidiary of the defendant in an unrelated

6

matter and worked alongside a lawyer who served as a trustee of the defendant); Marcus as Tr. of Grace Preferred Litig. Tr. v. Smith, 755 F. App'x 47, 50 (2d Cir. 2018) (judge's former law clerk joined Sullivan & Cromwell, counsel for defendants, but was screened from the matter); Camacho v. Autoridad de Telefonos de Puerto Rico, 868 F.2d 482, 490 (1st Cir. 1989) (judge had issued electronic surveillance orders challenged in the case; plaintiffs (the parties seeking recusal) had impugned the judge's character during a hearing; and the judge supported Puerto Rico statehood, whereas plaintiffs did not); Kendall v. Daily News Pub. Co., 716 F.3d 82, 85 (3d Cir. 2013) (Virgin Islands Supreme Court justices hearing appeal had separately initiated a criminal contempt charge against the plaintiff, a former Virgin Islands Superior Court judge); Patterson v. Mobil Oil Corp., 335 F.3d 476, 482 (5th Cir. 2003) (judge's former law firm partner represented defendant in a prior action brought by one of the plaintiffs against the defendant); Parker v. Connors Steel Co., 855 F.2d 1510, 1523 (11th Cir. 1988) (judge's law clerk was the son of a lawyer whose firm represented the defendants).

Indeed, the two cases with a conflict akin to the one here are Liljeberg and Chase Manhattan Bank. Mobil cites both decisions, ignoring that both vacated the tainted judgment at issue.

In any event, Mobil's position puts the cart before the horse. Each of the cases Mobil cites involves an appeal from a lower court's denial of a motion to recuse or vacate. None endorsed the approach Mobil contemplates here, in which a *district court* hearing a motion to vacate declined to vacate a judgment because an appellate court's future *de novo* review on the merits might moot that remedy. And that approach is entirely circular—it assumes that there will be an appellate decision on the merits as the basis for not deciding the motion to vacate, but there *would not be* such an appeal if the motion to vacate were granted. Unsurprisingly, then, each

7

case Mobil cites involved an *appellate court* construing an appeal from a denied motion to recuse or vacate alongside an appeal taken on the merits.  See Faulkner, 409 F.3d at 33–34, 42 (appeal from denial of motion to recuse and other rulings); Marcus, 755 F. App'x at 49–50 (appeal from denial of motion to vacate and other rulings); Camacho, 868 F.2d at 486, 490 (appeal from denial of motion to recuse and other rulings); Kendall, 716 F.3d at 84, 98 (same); Patterson, 335 F.3d at 482–83 (same); Parker, 855 F.2d at 1515, 1523 (same).

Thus, Mobil cannot point to a single instance in which a district court did not vacate a judgment—let alone consider the propriety of the remedy—out of (speculative) concern for what a court might do on an appeal that might or might not go forward.  That is for good reason.  If the possibility of *de novo* appellate review on an independent legal issue could excuse a district court from remedying a Section 455(a) violation, district courts would virtually always avoid imposing any remedy at all.  That makes no sense, particularly because "[t]he very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible."  Liljeberg, 486 U.S. at 865.

**3.     Letting The Judgment Stand Would Impair The Public's Confidence.**

Lastly, Mobil suggests that vacating the judgment would create "substantial additional expense and delay, . . . all just to bring the case back to the Court of Appeals (again) months or years from now to hear and resolve the same two discrete, purely legal issues the Court of Appeals is currently poised to hear and resolve now."  Mobil Opp. at 15.  Mobil is wrong.

*First*, it is simply not the case that, however this Court rules on TIG's Motion to Vacate, the parties will simply be right back where they are now.  If this Court grants TIG's Motion, thus erasing the judgment below and the orders on appeal, this litigation would proceed on a far different trajectory.  The present appeal will be withdrawn as moot.  And this Court might deny Mobil's petition to compel arbitration; though Mobil might appeal such a decision, the scope of

8

that hypothetical appeal would be quite different from the scope of this appeal.  Among other things, there would be no arbitration award and thus no question about the propriety of prejudgment interest, one of the questions presented in the current appeal.  More importantly, the denial of arbitration would permit TIG to proceed with its New York State court action on the underlying insurance coverage dispute, fundamentally altering the course of this litigation, as well as the issues presented on any appeal.  See TIG Mot. at 2.

*Second*, Mobil can hardly blame TIG for delay (much as it tries to do so).  TIG sought to streamline the proceedings years ago by appealing Judge Ramos's order compelling arbitration immediately; Judge Ramos denied the request, requiring that an appeal wait until after the arbitral award was confirmed.  Id. at 3 (discussing filings).  Indeed, Mobil opposed TIG's request to resolve at the outset whether this dispute was arbitrable, specifically to avoid this very circumstance.  Dkt. No. 28.  Having opposed TIG's efforts to obtain an early appeal of the arbitrability question so as to avoid a potentially superfluous arbitration, Mobil cannot now be heard to complain about the exact consequence TIG tried to avoid.

*Third*, and perhaps most importantly, consider the implication of Mobil's argument.  Mobil boldly asserts that vacating the judgment somehow would "'undermin[e] the public's confidence in the judicial process.'"  Mobil Opp. at 15 (quoting Liljeberg, 486 U.S. 847).  Yet Mobil blithely ignores why things have come to this pass:  There has been a disclosure that Judge Ramos owned stock in Mobil when he ruled in Mobil's favor, including by awarding Mobil a judgment of approximately $33 million.  That clear conflict of interest requires recusal, and Judge Ramos agrees.

This Court is poised to determine what remedy is appropriate in this circumstance, and that remedy is vacatur of the judgment.  Mobil would have this Court believe that it is just not

worth it for this Court, or even an appellate court, to address a disqualifying conflict like the one here, because there will be an appeal anyway. The implication of Mobil's position is that conflicted judges should be free to decide cases, because the aggrieved party always can appeal. That notion is foreign to our system of justice, which does not disregard the appearance of impropriety because it is inconvenient for the parties to re-litigate before an unconflicted judge.

## CONCLUSION

For the above reasons, TIG respectfully requests that the Court issue an indicative ruling under Federal Rule of Civil Procedure 62.1(a)(3) stating either (i) that it would grant TIG's motion to vacate the order compelling arbitration (Dkt. No. 21), the order confirming the Arbitral Award and imposing prejudgment interest (Dkt. No. 49), and the final judgment (Dkt. No. 52) in this matter if the Second Circuit remands for that purpose; (ii) or that TIG's motion at least raises a substantial issue regarding the justification for vacatur, as well as any other relief the Court deems necessary.

Dated:  September 3, 2021    /s/ Daniel P. Goldberg

Daniel P. Goldberg
Daniel M. Sullivan
Alison B. Miller
HOLWELL, SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, New York 10017
(646) 837-5151
dgoldberg@hsgllp.com
dsullivan@hsgllp.com
amiller@hsgllp.com


Christopher R. Carroll
Jillian G. Dennehy
KENNEDYS CMK LLP
570 Lexington Avenue
New York, New York 10022
(908) 848-6310
christopher.carroll@kennedyslaw.com
jillian.dennehy@kennedyslaw.com

*Attorneys for Respondent TIG Insurance Company*