```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  10/14/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EXXONMOBIL OIL CORPORATION,

               Petitioner,

-v.-

TIG INSURANCE COMPANY,

               Respondent.

16 Cv. 9527 (MKV)

**ORDER DENYING
MOTION TO VACATE**

---

MARY KAY VYSKOCIL, District Judge:

This matter is before the Court on the Motion of Respondent TIG Insurance Company for an "indicative ruling" under Fed. R. Civ. P 62.1(a)(3) stating either that the Court will grant Respondent's Motion to Vacate (1) the Court's Order compelling arbitration [ECF No. 21]; (2) the Court's Order confirming the arbitral award and imposing pre-judgment interest [ECF No. 49]; and (3) the final judgment [ECF No. 52] in this matter should the Second Circuit remand for that purpose; or that that Motion at least raises a substantial issue regarding the justification for vacatur. [ECF No. 58]. This case was reassigned to me on August 17, 2021, after Judge Ramos was conflicted out of presiding over the case. For the reasons discussed below, the Court denies the Motion to Vacate.

## BACKGROUND

This case concerns an insurance policy dispute between Petitioner ExxonMobil Oil Corporation ("Petitioner" or "Exxon") and TIG Insurance Company ("Respondent" or "TIG") regarding an Excess Liability Insurance Policy. The Policy covers Petitioner and provides for third-party liability insurance coverage subject to a $25 million limit. (Declaration of Donald W. Brown (Brown Decl.) Ex. A (Award) [ECF No. 38-1] ¶ 1). Beginning in the late 1990s, lawsuits seeking damages for groundwater and drinking water well contamination involving methyl

1

tertiary butyl ether (MTBE) were filed against Exxon.[1] (Award ¶¶ 11–13). Exxon's liabilities in the MTBE lawsuits exceeded $325 million and implicated the full $25 million TIG Policy Limit. (Award ¶¶ 142–146).

In September 2015, Exxon made a formal demand to TIG for coverage. (Petition to Compel Arbitration (Pet.) [ECF No. 1] ¶ 10). After engaging in discussions regarding Exxon's claim, (Pet. ¶ 10), TIG filed suit in New York County Supreme Court asking for a judicial declaration that TIG owes no coverage under the Policy for Exxon's liabilities, (Pet. ¶ 11). On December 9, 2016, Exxon filed in federal court a Petition to Compel Arbitration under the terms of the Policy. (*See* Pet.)

Shortly thereafter, this case was assigned to Judge Ramos. After briefing and oral argument, Judge Ramos issued an order granting Exxon's petition to compel TIG to submit to arbitration and to enjoin TIG from proceeding in the New York Supreme Court action. [ECF No. 21]. TIG filed a notice of appeal from the order [ECF No. 27], but then filed a motion to dismiss the appeal, which the Second Circuit granted, [ECF No. 30]. The parties proceeded to arbitration and on August 14, 2019, the arbitral Tribunal issued a decision awarding Exxon the full $25 million claim. (Award ¶147).

On November 21, 2019, Exxon filed a Motion to Confirm Arbitration Award and for Entry of Final Judgment including Pre-judgment Interest, [ECF No. 36], which the Court granted, [ECF No. 49]. Final Judgment was entered on May 26, 2020, [ECF No. 52], and TIG appealed on June 19, 2020, [ECF No. 53].

---

[1] MTBE is a gasoline additive used as an octane enhancer and as an oxygenator to reduce air pollution as required by federal mandates under the Clean Air Act. (Award ¶¶ 8–10).

After the notice of appeal was filed, the Clerk of this Court issued a letter to the parties on July 29, 2021 explaining that Judge Ramos had been informed that "while he presided over the case he owned stock in ExxonMobil Corporation." [ECF No. 56]. Although the letter states that this ownership "neither affected nor impacted his decisions in this case," it noted that "his stock ownership would have required recusal under the Code of Conduct for United States Judges." [ECF No. 56]. Subsequent to the receipt of this letter, Respondent filed in this Court the Motion to Vacate at issue here, [ECF No. 58], and moved to stay its appeal, [Motion to Hold Appeal in Abeyance, *ExxonMobil Oil Corporation v. TIG Insurance Company*, No. 20-1946 (2d Cir. 2021), ECF No. 74]. On August 30, 2021, the U.S. Court of Appeals for the Second Circuit granted Respondent's motion to hold the appeal in abeyance pending the resolution of its Motion to Vacate. [ECF No. 63]. The Appellate Court directed the parties to notify it when this Court issues a ruling pursuant to Respondent's Fed. R. Civ. P. 62.1 Motion, and in any event, no later than October 15, 2021. [ECF No. 63].

**DISCUSSION**

**I.   The Motion to Vacate Is Denied**

As a threshold matter, Judge Ramos should have recused himself from this matter upon its assignment to him. Under the Code of Conduct for United States Judges, "[a] judge should . . . act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Code of Conduct for United States Judges, Canon 2(A).

The law requires that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a); Code of Conduct for United States Judges, Canon 3(C)(1). In furtherance of

this objective, "[a] judge should inform himself about his personal and fiduciary financial interests." 28 U.S.C. § 455(a); Code of Conduct for United States Judges, Canon 3(C)(2).

Judge Ramos' ownership of stock in a party to this proceeding, and specifically in the party for which he has ruled in favor, impairs the public confidence in the integrity of the judicial process that these rules were put in place to prevent. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859 (1988); *see also* James V. Grimaldi, et al., *131 Federal Judges Broke the Law by Hearing Cases Where They Had a Financial Interest*, Wall Street Journal, Sept. 28, 2021, https://www.wsj.com/articles/131-federal-judges-broke-the-law-by-hearing-cases-where-they-had-a-financial-interest-11632834421.

The Second Circuit has held that harmless error review applies to Section 455(a) violations. *See Faulkner v. Nat'l Geographic Enterprises Inc.*, 409 F.3d 26, 42 (2d Cir. 2005). The Court does not consider any violation of Section 455(a) to be harmless since the integrity of the judicial process is paramount and the potential damage from impairment of the public confidence in the judicial process is a serious concern. However, should the Court conclude that Judge Ramos' rulings were correct, the Court may deny the Motion to Vacate because Respondent would not have been harmed as regards this proceeding.

The Court has reviewed the Petition to Compel Arbitration, the Motions, and relevant filings in this proceeding, as well as the Orders and Opinions issued by Judge Ramos. For the below reasons, the Court concurs with Judge Ramos' thorough analysis and reasoning, and each of his orders. Accordingly, the Motion to Vacate the Court's prior Orders is denied.

### A. Motion To Compel Arbitration

The Court adopts Judge Ramos' Order granting Petitioner's Motion to Compel Arbitration. [ECF No. 21]. The Policy between Petitioner and Respondent included

Endorsement 11 [ECF No. 1-1, at 46], which sets out the ADR procedures for issues arising under the Policy.  Under a plain reading of that contract term, if a party requests ADR under paragraph 1, but the parties cannot agree on the type of ADR to pursue in 90 days, the parties proceed to arbitration under paragraph 4.  This is exactly how Judge Ramos read the provision.  [ECF No. 22].

Respondent's sole argument on this motion is that Endorsement 11 should be read so that paragraph 4 is only triggered if the parties *actually agree* to ADR under paragraph 2 of Endorsement 11.  [ECF No. 15].  However, Judge Ramos' reading is correct.  Paragraph 4 specifically cites to paragraph 1 as the predicate for triggering arbitration.  As such, the Court adopts Judge Ramos' reasoning and concludes that Respondent was not harmed by Judge Ramos' Order granting Petitioner's Motion to Compel Arbitration.

### B. Motion To Confirm Arbitration

After Petitioner won in arbitration, it moved to confirm the arbitral award.  [ECF No. 36].  TIG opposed the Motion to Confirm and cross-moved to vacate the arbitral award.  [ECF Nos. 39, 41, 42].  Judge Ramos granted the Motion to Confirm.  [ECF No. 49].  TIG now seeks vacatur of the Order.  [ECF No. 58].

The Federal Arbitration Act delineates very narrow grounds for challenging an arbitration award.  9 U.S.C. §§ 9, 10(a).  The party challenging an arbitral award bears a heavy burden.  *See Leeward Constr. Co. v. American Univ. of Antigua-Coll. of Med.*, 826 F.3d 634, 638 (2d Cir. 2016).  Respondent's sole argument in opposition to the confirmation of the Award was that it "manifestly disregarded the law."  [ECF No. 41, at 8].  Respondent cited to the statement from the Tribunal that its analysis in interpreting provisions in the Policy was "guided by applying common speech and the reasonable expectation and purpose of the ordinary businessman."

([ECF No. 41, at 10] (citing Declaration of Donald W. Brown (Brown Decl.) Ex. A (Award) [ECF No. 38-1] ¶ 97). Respondent asserts that the language that the Tribunal used came from the decision in *Ace Wire & Cable Company v. Aetna Casualty & Surety Company*, 60 N.Y.2d 390 (1983), which adopted *contra proferentum* as a means of interpreting ambiguous language in a contract. [ECF No. 41, at 10]. Respondent asserts that in applying the contract interpretation principles from *Ace Wire*, the Tribunal violated the Policy's provision that it be interpreted "in an even-handed fashion." [ECF No. 38-2 at V(q)].

The relevant provision of *Ace Wire* states:

> The tests to be applied in construing an insurance policy are common speech (*Lewis v. Ocean Acc. & Guar. Corp.*, 224 N.Y. 18, 21, 120 N.E. 56) and the reasonable expectation and purpose of the ordinary businessman (*Bird v. St. Paul Fire & Mar. Ins. Co.*, 224 N.Y. 47, 51, 120 N.E. 86 (1918). The ambiguities in an insurance policy are, moreover, to be construed against the insurer, particularly when found in an exclusionary clause (*see Breed v. Insurance Co.*, 46 N.Y.2d 351, 353, 413 N.Y.S.2d 352, 385 N.E.2d 1280).

60 N.Y.2d at 398.

Judge Ramos concluded that the two interpretive principles laid out in *Ace Wire* are separate and that the Tribunal's use of one did not mean it had employed the other. [ECF No. 49, at 9–10]. Judge Ramos correctly concluded that "[t]here is no basis to conclude that interpreting a contract 'by applying common speech and the reasonable expectation and purpose of the ordinary businessman' is anything other than an evenhanded interpretive method." [ECF No. 49, at 8]. Further, Judge Ramos concluded that the Tribunal did use an even-handed interpretation of the Policy because it rejected both parties' interpretation of a term in the Policy, the meaning of which was disputed by the parties, and instead the Tribunal fashioned its own interpretation. Further, the Tribunal made clear that had it used the interpretation of this term for which Respondent advocated, it still would have ruled for Petitioner. [ECF No. 49, at 10]. The

6

Court concurs with Judge Ramos and adopts his reasoning. As such, the Court concludes that Respondent was not harmed by Judge Ramos' Order granting Petitioner's Motion to Confirm the Arbitration Award.

### C. Imposition of Pre-Judgment Interest

Judge Ramos also granted Petitioner's request [ECF No. 37, at 15–22] that the judgment in the case include post-breach interest, consisting of both pre- and post-Award interest. [ECF No. 49]. The Court again concurs with and adopts Judge Ramos' reasoning.

First, the Tribunal did not choose to deny pre-judgment interest after concluding that it had authority to do so, which would have precluded the Court from granting Petitioner's request. *See Finger Lakes Bottling Co. v. Coors Brewing Co.*, 748 F. Supp. 2d 286, 289 (S.D.N.Y. 2010). The Tribunal merely concluded that it lacked jurisdiction to award interest since it found Respondent liable for the full $25 million Policy and the Policy states that any ADR award was limited to $25 million. (Award ¶¶ 137, 139, 140–141). Therefore, Judge Ramos correctly concluded that he could rule on this issue. [ECF No. 49, at 14].

As to the issue of interest itself, the law is clear, that "prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract." *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 606 (2d Cir. 2003) (quoting *Graham v. James*, 144 F.3d 229, 239 (2d Cir. 1998)); *see also West Virginia v. United States*, 479 U.S. 305, 310 (1987). And post award interest on an arbitration award is available as of right under New York law. *New York Hotel & Motel Trades Council, AFL-CIO v. Stanford New York*, No. 21 CIV. 2012 (PAE), 2021 WL 1851998, at *5 (S.D.N.Y. May 10, 2021); *In re Arb. Between Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 226 (S.D.N.Y. 2005) (Chin, J.).

Respondent relies on the language of Endorsement 11 that states that "[A]ny decision, award, or agreed settlement made as a result of an ADR process shall be limited to the limits of this Policy [*ie*. $25 million]." [ECF No. 38-2, at 46]. Respondent's argument in opposition to Petitioner's motion was that this language precludes an imposition of interest that would result in judgment for damages exceeding $25 million. [ECF No. 41, at 20]. However, Judge Ramos correctly concluded that the language of this provision referring only to "decisions" and "awards" means that it only refers to decisions or awards by ADR bodies. [ECF No. 49, at 17]. Endorsement 11 does not refer to "orders" or "judgments," which are the product of judicial proceedings. Moreover, adopting Respondent's interpretation would preclude both pre-judgment and post-judgment interest and would create perverse incentives for the losing party to simply delay payment after judgment. *See Bank of New York v. Amoco Oil Co.*, 35 F.3d 643, 662 (2d Cir. 1994) ("[C]ourts should not interpret the settlement agreement so as to create incentives for the defendant to delay while enjoying the free use of the plaintiff's money."). The Court concurs with Judge Ramos and adopts his reasoning. As such, the Court concludes that Respondent was not harmed by Judge Ramos' imposition of pre-judgment interest on Respondent and therefore declines to vacate that Order.

## CONCLUSION

Respondent's Motion for an indicative ruling [ECF No. 58] is DENIED. The challenged Orders are legally correct, and the Court denies the request that they be vacated.

Dated:   October 14, 2021
         New York, New York

*Mary Kay Vyskocil*
MARY KAY VYSKOCIL
United States District Judge

8